21CA0465 Peo in Interest of GM 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 21CA0465 Mesa County District Court No. 19JV198 Honorable Lance P. Timbreza, Judge The People of the State of Colorado, Appellee, In the Interest of G.M. and A.M., Children, and Concerning B.M., Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE RICHMAN Tow and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Todd Starr, County Attorney, Jeremy Savage, Chief Deputy County Attorney, Grand Junction, Colorado, for Appellee Garrett Forsgren, Guardian Ad Litem Ainsley Bochniak, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant 
1 ¶ 1 B.M. (father) appeals the judgment terminating the parent-child legal relationship with his children. We affirm. I. Background ¶ 2 The Mesa County Department of Human Services filed a petition in dependency and neglect regarding then-eleven-year-old G.M. and then-nine-year-old A.M. (the children). The Department alleged concerns about substance abuse, mental health, and domestic violence. The Department also alleged that father was incarcerated. ¶ 3 The juvenile court adjudicated the children dependent and neglected. The court then adopted a treatment plan for father. ¶ 4 The Department later moved to terminate father’s parental rights. Fourteen months after the petition was filed and following a hearing, the juvenile court granted the motion. II. Termination of Parental Rights A. General Law ¶ 5 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the 
2 plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2021; People in Interest of C.H., 166 P.3d 288, 289 (Colo. App. 2007). ¶ 6 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. “We review the juvenile court’s findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. But we review de novo the juvenile court’s legal conclusions based on those facts — including its conclusion that the Department made reasonable efforts to rehabilitate the parent and reunify the family under section 19-3-604(2)(h). See S.R.N.J-S., ¶ 10. B. Reasonable Efforts ¶ 7 Father contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate him. 
3 Specifically, he asserts that the Department failed to help him with domestic violence treatment. We discern no basis for reversal. ¶ 8 In determining whether a parent is unfit, the juvenile court must consider whether the Department made reasonable efforts to reunify the family. § 19-3-604(2)(h), (k)(III); see also §§ 19-3-100.5, 19-3-208, C.R.S. 2021 (requiring the state to make reasonable efforts to reunite the family when appropriate). ¶ 9 Among the efforts required under section 19-3-208 are screening, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; visitation services for parents with children in out-of-home placement; and placement services including foster care and emergency shelter. § 19-3-208(2)(b). ¶ 10 Section 19-3-208 also lists other services that should be made available if such a service is determined necessary and appropriate by the case plan and there is adequate funding for it. § 19-3-208(2)(d). These include transportation, child care, in-home, diagnostic, mental health, health care, drug and alcohol treatment, 
4 after care, family support, financial, and family preservation services. Id. ¶ 11 The reasonable efforts standard is deemed met if services are provided in accordance with section 19-3-208. § 19-1-103(114), C.R.S. 2021; People in Interest of J.A.S., 160 P.3d 257, 262 (Colo. App. 2007). The parent is responsible for using those services to obtain the assistance that he or she needs to comply with their treatment plan. People in Interest of J.C.R., 259 P.3d 1279, 1285 (Colo. App. 2011). ¶ 12 Here, the juvenile court found that the Department had made reasonable efforts to provide services for father, but he had “not taken advantage of those services to the extent required by his treatment plan.” ¶ 13 The record shows that the Department devised a treatment plan for father; coordinated letters and video visits between father and the children; and facilitated placement services for the children. We note that father had been incarcerated during the case and had been released to Community Corrections approximately three months before the termination hearing. 
5 ¶ 14 Regarding domestic violence treatment, the record indicates that three months before the termination hearing, father asked the Department to pay $40 for the intake fee. The caseworker testified that she received approval to pay for the intake and asked father to give her “an invoice or a bill or something stating that that was the amount of that intake.” She further testified that she emailed father three times about an invoice, but he “did not get that back to me, so that $40.00 was never paid.” Father testified that he had completed the intake. ¶ 15 Later, father asked for $220 to pay for the assessment fee. The caseworker testified that she again received approval to pay but was told that a contract with the treatment provider was needed if the Department was going to pay for ongoing treatment, that she told father the Department needed to set up a contract, and that she made several attempts to reach the treatment provider. She further testified that she had received an email the day before the termination hearing from the provider to arrange the contract. At the time of the termination hearing, father had not completed the domestic violence assessment or begun treatment. 
6 ¶ 16 Because the record shows that the Department would have paid for the intake, the assessment, and treatment if father had provided some type of documentation from the treatment provider, we cannot say that the Department failed to make reasonable efforts to help father with domestic violence services. Father was responsible for providing the necessary documentation so that he could have participated in such services; but, he did not. ¶ 17 We conclude that the record supports the juvenile court’s factual findings, and therefore, we will not disturb them or the court’s legal conclusions on appeal. C. Less Drastic Alternatives ¶ 18 Father contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. In particular, he argues that the court could have allocated parental responsibilities to the paternal aunt and uncle. We discern no basis for reversal. ¶ 19 The juvenile court must also consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. People in Interest of D.P., 181 P.3d 403, 408 (Colo. App. 2008). In considering less drastic alternatives, the court bases 
7 its decision on the best interests of the children, giving primary consideration to their physical, mental, and emotional conditions and needs. § 19-3-604(3). ¶ 20 Here, the juvenile court considered an allocation of parental responsibilities (APR), but found that it was not appropriate or in the children’s best interest. In doing so, the court found that the children needed stability and an APR would “lead to potential instability and disruption for the children.” The court recognized that there were no concerns with the paternal aunt and uncle but found that the children did not have strong connections with them and that the current placement providers had “become the permanency [the children] know.” Entering an APR with the aunt and uncle would have required the children to be moved from their location in Grand Junction. The court found that moving the children would uproot them “from their geographic area, school, community, mother, [other] siblings, and placement.” ¶ 21 The record supports the juvenile court’s findings. The case had been going for over a year and the children needed permanency. The caseworker testified that the children needed a 
8 stable and consistent home with caregivers who could meet their needs. ¶ 22 The record also shows that the Department preferred adoption over an APR. The caseworker had concerns about an APR because the parents had tried to manipulate the children during the visits. Specifically, the caseworker testified that there had been several times where the parents pressured the children during the visits and if the visits continued through an APR, the children would experience “emotional harm.” The foster mother testified that she strongly opposed an APR because the parents were “volatile” and “cannot stay within the boundaries of what they are set up with [the Department].” The caseworker also testified that although an APR could provide permanency, it would not meet the children’s needs here. ¶ 23 True, the Department approved the home study for the paternal aunt and uncle. But, the caseworker opined that removing the children from their current placement would be “very detrimental” and would “force them to start all over in a new environment with people that they don’t know very well.” The 
9 caseworker also testified that the children were “adamant” about wanting to stay with their current placement providers. ¶ 24 Because the record supports the juvenile court’s factual findings, we will not disturb those findings or the court’s legal conclusions on appeal. III. Conclusion ¶ 25 We affirm the judgment. JUDGE TOW and JUDGE GROVE concur.