Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 16, 2021

## 2021 CO 14

**No. 20SC187, *People in Interest of A.M.* — Least Restrictive Means — Needs, Interest, and Welfare of Child.**

In this opinion, the supreme court reviews a decision of a divided panel of the court of appeals, holding that a trial court must deny a motion to terminate parental rights that has been proven by clear and convincing evidence if a less drastic alternative to termination exists even though it is not in the child's best interests.

The supreme court now holds that the court of appeals' adoption of an "adequacy" standard is at odds with the court's prior rulings regarding the best interests of the child standard in termination cases—a standard that does not run afoul of parents' due process rights. The court further holds that consideration of less drastic alternatives is implicit in the statutory criteria for termination; that due process does not require such findings be made explicit, though it is the better

practice for trial courts to do so; and that the court of appeals failed to apply the correct legal standard and, instead, substituted its judgment for that of the trial court.

Accordingly, the judgment of the court of appeals is reversed.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2021 CO 14**

**Supreme Court Case No. 20SC187**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA1406

**Petitioners:**

The People of the State of Colorado,

In the Interest of Minor Child: A.M.

and

A.M., Minor Child,

v.

**Respondent:**

T.M.

**Judgment Reversed**
*en banc*
February 16, 2021

**Attorneys for Petitioner the People of the State of Colorado:**
Larimer County Attorney Office
Jeannine S. Haag, County Attorney
Jennifer A. Stewart, Senior County Attorney
David P. Ayraud, Senior County Attorney
 *Fort Collins, Colorado*

**Attorney for Petitioner A.M.:**
Josi McCauley, Guardian ad litem
   *Fort Collins, Colorado*

**Attorneys for Respondent:**
Blain Myhre, LLC
Blain Myhre
   *Englewood, Colorado*

A.E. Bochniak Law, LLC
Steven E. Baum
   *Denver, Colorado*

**Attorney for Amicus Curiae Office of Respondent Parents' Counsel:**
Christine Van Gaasbeek
   *Denver, Colorado*

**JUSTICE BERKENKOTTER** delivered the Opinion of the Court.

¶1 We review a decision of a divided panel of the court of appeals holding that a trial court *must* deny a motion to terminate parental rights that has been proven by clear and convincing evidence if a less drastic alternative to termination exists even though it is *not* in the child's best interests.

¶2 We also review whether a trial court must make express findings regarding less drastic alternatives to termination, and whether the panel majority substituted its judgment for the factual findings of the trial court.[1] We hold that the panel departed from well-established jurisprudence regarding the best interests of the child standard in termination cases; that a trial court is not required to make express less drastic alternative findings, though it is certainly the better practice to do so; and that the majority substituted its judgment for that of the trial court. We therefore reverse the judgment of the court of appeals.

---

[1] We granted certiorari to consider the following issues:

1. Whether a trial court is required to make a specific finding considering and eliminating less drastic alternatives before ordering termination of the parent-child legal relationship, and if so, whether the trial court must do so using the best interests of the child standard or the adequacy standard.

2. Whether the Court of Appeals acted discordantly with applicable decisions of the Court when it failed to properly apply the clearly erroneous standard of review, substituting the trial court's factual findings with its own judgment, and reversed the trial court's termination decree.

# I. Facts and Procedural History

¶3    A.M. was placed with her Father's stepsister ("Aunt") after A.M. tested positive for heroin at birth and after both of A.M.'s parents tested positive for illegal drugs. The trial court subsequently adjudicated A.M. dependent and neglected as to both parents and adopted appropriate treatment plans.

¶4    The People ultimately filed a motion to terminate the rights of both parents, alleging that they had not complied with their treatment plans, that no modifications to the plans could be made to enable them to regain parental fitness, that no less drastic alternatives to termination existed, and that termination of the parent-child legal relationship was in A.M.'s best interests.

¶5    Following a two-day termination hearing, the trial court found:

> It would be in the best interest of the Child for the Court to terminate the Respondents' parental rights so that the Child would be available for adoption by her [A]unt S.A. Termination and adoption would provide certainly [sic] and stability in the short, medium and long term. It would give the Child the best chance of growing up in a supportive, loving and safe environment for the duration of her childhood.

> However, in order the [sic] terminate a parent's rights, the Court must find that there are no less drastic alternatives short of termination. The Court cannot make that finding in this case.

¶6    The trial court denied the People's motion, holding that "the best interest of the child would be served by termination; however, permanent custody is a less drastic alternative."

4

¶7     The People appealed, arguing that the trial court erred in holding that "any permanency option . . . was an automatic bar to termination of parental rights." In an unpublished opinion, a division of the court of appeals reversed the trial court's judgment, holding that it erroneously concluded that it *must* award permanent custody even though that was not in the child's best interests. *People in Interest of A.M.*, No. 18CA1091, ¶ 17 (May 2, 2019) ("*A.M. I*"). The division remanded the case to the trial court with directions to resolve whether the less drastic alternative of permanent custody to Aunt was in the child's best interests or whether, as the court's findings indicated, termination was in A.M.'s best interests. *Id.*

¶8     On remand, the trial court found that "permanent custody was an appropriate and viable option and less drastic than termination; however, termination is better for the child because it provides a slightly higher probability of permanence." The trial court, accordingly, terminated Father's and Mother's parental rights.

¶9     Father appealed the trial court's termination order. A divided panel of the court of appeals reversed. The majority held that instead of focusing on the best interests of the child, as the division in the first appeal ordered, the trial court was required to determine "whether there is an alternative short of termination that *adequately* meets the child's physical, emotional, and mental health needs." *People in Interest of A.M.*, 2020 COA 30, ¶ 24, __ P.3d __ ("*A.M. II*").

5

¶10 The majority concluded that "when both an [allocation of parental responsibilities ("APR")] to a relative and termination would adequately serve the child's physical, mental, and emotional needs, termination *must* be denied." *Id.* at ¶ 26 (emphasis added). It viewed this outcome as mandated by our decision in *People in Interest of M.M.*, 726 P.2d 1108, 1123 (Colo. 1986). It read *M.M.* as "requiring that *before* an order terminating the parent-child relationship may be entered, the court must consider *and reject* less drastic alternatives." *A.M. II*, ¶ 27.

¶11 In her dissent, Judge Terry observed that she would have affirmed because there was support in the record for the trial court's factual findings and determination that termination was in A.M.'s best interests. *People in Interest of A.M.*, 2020 COA 30, ¶ 32, __ P.3d __ (Terry, J., dissenting).

¶12 We granted certiorari and now reverse the judgment of the court of appeals.

## II. Analysis

¶13 We begin by outlining the appropriate standard of review. Next, we detail the law concerning termination of parental rights, less drastic alternatives, and constitutional considerations in termination cases. We then apply the relevant law and hold that the court of appeals' adoption of an adequacy standard is at odds with our prior rulings regarding the best interests of the child standard in termination cases—a standard that does not run afoul of parents' due process rights. We further hold that consideration of less drastic alternatives is implicit in

6

the statutory criteria for termination; that due process does not require such findings be made explicit; and that the court of appeals failed to apply the correct legal standard and, instead, substituted its judgment for that of the trial court.

¶14 Accordingly, we reverse the judgment of the court of appeals.

## A. Standard of Review

¶15 Where resolution of an issue necessitates application of the termination statute to evidentiary facts, it presents a mixed question of fact and law. *See People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 21, 329 P.3d 276, 282. The credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are within the discretion of the trial court. *People in Interest of A.J.L.*, 243 P.3d 244, 249–50 (Colo. 2010). Thus, a trial court's factual findings and conclusions will be set aside only where they are "so clearly erroneous as to find no support in the record." *Id.* at 250 (quoting *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982)).

¶16 "Whether the court of appeals applied the correct legal standard to a case under review is a matter of law" to be reviewed de novo. *Id.* at 249.

## B. Termination of Parental Rights

¶17 Parents have a constitutionally protected liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *In Interest of Baby A*, 2015 CO 72, ¶ 20,

363 P.3d 193, 201 (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). Children also have an interest in the continuation of their family relationship and in preventing the erroneous termination of the parent-child legal relationship. *Santosky*, 455 U.S. at 760.

¶18 The procedure by which the parent-child relationship is terminated must satisfy due process. *Id.* at 753–54 (intervening in "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child" requires "fundamentally fair procedures"). Due process requires that a parent be provided with notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination. *See People in Interest of M.B.*, 70 P.3d 618, 622 (Colo. App. 2003). Due process further requires that the criteria for termination of parental rights be established by clear and convincing evidence. *Santosky*, 455 U.S. at 769–70.

¶19 Thus, a trial court may terminate parental rights only if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. (2020); *E.S.V. v. People*, 2016 CO 40, ¶ 19, 370 P.3d 1144, 1148; *People in*

8

*Interest of C.H.*, 166 P.3d 288, 289 (Colo. App. 2007). Implicit in these criteria is the requirement that the trial court consider and eliminate less drastic alternatives. *M.M.*, 726 P.2d at 1122.[2]

¶20 These criteria require the trial court to give primary consideration to the child's physical, mental, and emotional needs. § 19-3-604(3); *People in Interest of J.M.B.*, 60 P.3d 790, 793 (Colo. App. 2002). "[The] primary and controlling issue in termination proceedings, even though parental rights are at stake, is the determination of what will best serve the interests and welfare of the child." *K.D. v. People*, 139 P.3d 695, 701 (Colo. 2006) (citing *People in Interest of M.M.*, 520 P.2d 128, 131 (Colo. 1974)); *see also* § 19-3-604(3) ("In considering the

---

[2] The requirement that the trial court consider and eliminate less drastic alternatives arose in our cases decided before the adoption of specific statutory criteria for termination. These cases recognized that the significance of the parent-child relationship was such that certain conditions must be satisfied before an order of termination could be properly entered, including an express consideration of less drastic alternatives and a specific elimination of these alternatives. *People in Interest of E.A.*, 638 P.2d 278, 284 (Colo. 1982); *People in Interest of C.S.*, 613 P.2d 1304, 1307 (Colo. 1980).

In 1977, when the legislature enacted section 19-11-105, 8B C.R.S. (1986), and adopted specific criteria to be applied in termination proceedings, it did not specifically refer to less drastic alternatives. We reasoned in *M.M.*, that although section 19-11-105 did not require a trial court to make an express finding that less drastic alternatives were considered and eliminated, a trial court's consideration and elimination of less drastic alternatives was implicit in the newly adopted legislative criteria. *M.M.*, 726 P.2d at 1122.

9

termination of the parent–child legal relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.").

## C. Application

### 1. Adequacy Versus Best Interests of the Child

¶21 A majority of the division concluded that the phrase "best interests of the child" is not required to be used as a superlative. *A.M. II*, ¶ 24. Instead, the majority held that "the inquiry must be whether there is an alternative short of termination that *adequately* meets the child's physical, emotional, and mental health needs." *Id.* That is, "when both an APR to a relative and termination would adequately serve the child's physical, mental, and emotional needs, termination *must* be denied." *Id.* at ¶ 26 (emphasis added). The majority viewed this outcome as mandated by *M.M.*, 726 P.2d at 1123, which it read as "requiring that *before* an order terminating the parent-child relationship may be entered, the court must consider *and reject* less drastic alternatives." *A.M. II*, ¶ 27.

¶22 In reaching this conclusion, the majority acknowledged that various divisions of the court of appeals have concluded that consideration of the child's best interests is applicable to less drastic alternative decisions. *Id.* at ¶ 24. In *J.M.B.*, for instance, the division concluded that the child's best interests "govern" termination, generally. 60 P.3d at 793. That division further held that permanent

placement with a family member is dependent on the child's best interests, as is the determination whether to order permanent placement as an alternative to termination. *Id.*

¶23 In *People in Interest of Z.M.*, 2020 COA 3M, ¶ 32, 463 P.3d 330, 335, a division held that if the record supports the trial court's findings that no less drastic alternatives existed and that termination of parental rights was in the child's best interests, the court will not disturb the findings. Still another division concluded that the trial court must consider the child's best interests when considering any placement short of termination. *People in Interest of A.R.*, 2012 COA 195M, ¶ 41, 310 P.3d 1007, 1017.

¶24 Even the case the majority relies on in support of its adequacy standard, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005), concluded that the child's permanent placement with a relative "is dependent" on the child's best interests, *A.M. II*, ¶ 24.

¶25 The primacy of the best interests standard in connection with the overall termination decision was also reflected in the opinion of the division following the first appeal in this case. *A.M. I*, ¶ 10 (quoting *J.M.B.*, 60 P.3d at 793). It stated that a "less drastic alternative analysis considers whether *any* placement, short of termination, would be in the child's best interest." *Id.* at ¶ 9 (quoting *A.R.*, ¶ 44, 310 P.3d at 1017). That division added, "Furthermore, 'the best interests of the

11

child govern any termination decision, and the court may find that long-term foster care is not a viable option when the child needs the permanency that only adoption can provide.'" *Id.* at ¶ 10 (quoting *J.M.B.*, 60 P.3d at 793).

¶26 That is, "the trial court must also consider whether the less drastic alternative itself is in the child's best interests." *Id.* at ¶ 15 (citing *People in Interest of S.T.*, 678 P.2d 1054, 1056 (Colo. App. 1983)). Many other divisions have reached similar conclusions about the primacy of the best interests of the child standard in termination cases.[3]

¶27 While these divisions use slightly varying terms to describe the interplay between a trial court's consideration of less drastic alternatives and the child's best interests, these divisions are uniform in recognizing that if a proposed alternative to termination is to be deemed viable, it must not only be adequate, it must be in the child's best interests. None of these cases suggests that the child's best interests is not a superlative or that "best" means adequate.

---

[3] Cases concluding that long-term or permanent placement may not be appropriate when it does not provide adequate permanence or otherwise meet the child's best interests include, but are certainly not limited to: *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011); *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007); *People in Interest of J.L.M.*, 143 P.3d 1125, 1126–27 (Colo. App. 2006); *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004); *M.B.*, 70 P.3d at 627; *People in Interest of E.I.C.*, 958 P.2d 511, 515 (Colo. App. 1998); *S.T.*, 678 P.2d at 1056.

¶28    This approach is also consistent with this court's opinions regarding the consideration of less drastic alternatives.  For instance, in *People in Interest of L.D.*, 671 P.2d 940, 945 (Colo. 1983), we held that, in deciding whether less drastic alternatives exist, a trial court may recognize differences between the parents, as well as differences between the children, and then base its termination decisions upon the best interests of the children.

¶29    True, in *M.M.*, we explained that the trial court must consider and reject less drastic alternatives.  726 P.2d at 1123.  But, we affirmed the trial court's termination order because, among other things, there was evidence in the record that supported its finding that "permanent foster care would not be in the minor child's best interests, nor would it serve any purpose."  *Id.* at 1123–24.

¶30    In contrast, the new "adequacy" standard that the court of appeals introduced in this case is at odds with the division's decision in *A.M. I*, the decisions of many other divisions, and this court's holdings concerning the significance and operation of the best interests of the child standard in termination cases.  While we have held that a trial court must consider and reject less drastic alternatives to termination as part of its overall consideration of the statutory criteria for termination, *M.M.*, 726 P.2d at 1123; *People in the Interest of E.A.*, 638 P.2d 278, 284 (Colo. 1981), the court of appeals' reliance on *M.M.* is misplaced.

13

*M.M.* did not adopt an adequacy standard or suggest that the trial court may give less than primary consideration to the best interests and welfare of the child.

¶31 Primary consideration of the child's physical, mental, and emotional condition and needs requires more than a mere assessment of adequacy in order to satisfy the overall intent of the Children's Code.

¶32 To that end, if a trial court considers a less drastic alternative in connection with its overall evaluation of the statutory criteria for termination and finds that it is in the child's best interests, it should deny the termination request. Conversely, if a trial court considers a less drastic alternative in connection with its overall consideration of the statutory criteria for termination and finds that termination is in the child's best interests, it must reject the alternative and order termination.

## 2. Constitutional Considerations

¶33 Our consideration of this matter does not end there. Father argues that this court should affirm the judgment of the court of appeals and prohibit termination unless no other adequate less drastic alternative is available in order to protect parents' fundamental liberty interest in the care of their children. He contends that the best interests of the child standard fails to adequately protect parents' fundamental constitutional rights. Father further asserts that there is no legitimate state interest in termination here, where *all* of A.M.'s needs are met by the less drastic alternative of placement with Aunt.

14

¶34    Father argues that a best interests standard is relatively subjective and is subject to greater risk of influence from the implicit biases, whims, and lay judgments of individual judges.  The fundamental constitutional rights of parents should not rest, he asserts, on the individual, subjective views of a single decisionmaker of what is "best," when an appropriate, adequate less drastic alternative that fully protects the child is available.

¶35    Father is correct that the purpose of dependency or neglect proceedings is not to deprive parents of their right to raise their children, but rather to preserve the family and protect the children.  And a parent has a constitutionally protected liberty interest in the care, custody, and management of his or her child.  *Santosky*, 455 U.S. at 753.  Children also have an interest in the continuation of their family relationship and in preventing the erroneous termination of the parent-child legal relationship.  *Id.* at 760.

¶36    As a result, "until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."  *Id.*  However, once the trial court is persuaded that the State has established a parent's lack of fitness, the interests of the child and the parent diverge.  *See id.* at 760–61.  At that point, the separate interests of the child outweigh the risk of erroneous termination of the parent-child relationship.  *See People in Interest of A.M.D.*, 648 P.2d 625, 637–38 (Colo. 1982).  The Children's Code

15

does not support the conclusion that "a parent-child relationship should be continued when it has been shown by clear and convincing evidence that . . . the parent is unfit, an appropriate treatment plan has been tried without success, and the conduct or condition of the parent is unlikely to change within a reasonable time." *Id.*

¶37 Thus, the consideration and elimination of a less drastic alternative to termination on the ground that termination best serves the child's interests, where the statutory criteria for termination are otherwise established by clear and convincing evidence, satisfies due process. To that end, if a trial court, in connection with its overall consideration of the statutory criteria for termination, finds that a less drastic alternative is available and is in the child's best interests, termination should be denied. Conversely, if the trial court finds that termination, not the less drastic alternative, is in the child's best interests, it must reject the alternative and order termination.

¶38 To the extent that the division majority suggests that its adequacy standard was necessary to satisfy due process, that conclusion was in error. Finally, with respect to Father's argument that a trial court's consideration of what is best for a child is somehow more subjective than an assessment of what is adequate, we find the argument unavailing.

### 3. Express Findings Regarding Less Drastic Alternatives

¶39    We turn next to Father's argument that express consideration and elimination of less drastic alternatives is necessary to protect parents' due process rights.  Father contends that trial courts should have to make an explicit finding that *no* less drastic alternative exists prior to terminating parental rights.  He asserts that such a finding is necessary to ensure that termination is a last resort.  He observes that parents who have substance abuse issues may not have them forever and "may become clean in the future, enabling them to again be able to properly care for and parent their children."

¶40    This court has previously held that, while a trial court must consider and eliminate less drastic alternatives, it is not required to make express findings in this regard.  *M.M.*, 726 P.2d at 1122.  This is because consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. *C.S. v. People*, 83 P.3d 627, 640 (Colo. 2004); *M.M.*, 726 P.2d at 1122.

¶41    That is, adherence to the statutory criteria for termination requires a trial court to consider less drastic alternatives and to reject those alternatives as unavailing before entering an order of termination.  *C.S.*, 83 P.3d at 640–41.  As long as the trial court's findings conform to the statutory criteria for termination and are adequately supported by evidence in the record, a reviewing court may

reasonably presume that, in the absence of any indication in the record to the contrary, the trial court considered and eliminated less drastic alternatives. *Id.*

¶42   It is, as we have observed in the past, the better practice for a trial court to make express findings regarding less drastic alternatives—as the trial court did here—but we will not require the trial court to do so.

¶43   With respect to Father's constitutional argument, we conclude that, because the consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination, due process is satisfied so long as the trial court considers the statutory criteria for termination in light of the appropriate standard of proof, even if it does not make explicit findings regarding less drastic alternatives.

## 4. Whether the Division Majority Failed to Properly Apply the Clearly Erroneous Standard of Review

¶44   Next, we consider whether the majority failed to properly apply the clearly erroneous standard of review and, instead, substituted its judgment for that of the trial court.

¶45   During the termination hearing, Aunt testified that adoption was best for A.M., that she preferred adoption over permanent custody, that she would provide A.M. with a stable home, and that she was open to communications with Father and Mother. The caseworker testified that permanent placement was not

an appropriate option for the child given the fear and anxiety that the parents' ability to request a major modification would cause.

¶46 In its first order, the trial court found that Father was unfit to parent and unfit to even visit A.M. because he was usually under the influence of substances. The court further found that parental visitation or parenting time would not be appropriate for many years. It determined that Father had not complied with his treatment plan, was unfit, and his condition was unlikely to change in a reasonable time. The court then denied the People's motion, holding that "the best interest of the child would be served by termination; however, permanent custody is a less drastic alternative."

¶47 Following the remand order, the parties did not present any further evidence. The trial court then made additional, detailed factual findings regarding less drastic alternatives and A.M.'s best interests and, based on those factual findings, terminated Mother's and Father's parental rights.

¶48 Father has not challenged the propriety of the trial court's factual findings regarding compliance with his treatment plan, fitness, or likelihood of change in his condition or conduct. Here, the trial court's determinations regarding permanent placement and its determination that termination was in the child's best interests were factual findings entitled to deference, unless unsupported by the record. *A.J.L.*, 243 P.3d at 250.

19

¶49 The trial court considered the availability of an APR, and still determined that termination of parental rights would be in the child's best interests. Those findings are supported by the record. The court of appeals, as the dissent noted, *A.M. II*, ¶ 32 (Terry, J., dissenting), was accordingly bound to affirm the decision of the trial court. *J.M.B.*, 60 P.3d at 793; *cf. People in Interest of L.M.*, 2018 COA 57M, ¶ 36, 433 P.3d 114, 121 (decision to terminate parental rights was affirmed where the record showed that APR would not serve child's best interests).

¶50 Because we conclude that the panel majority applied the incorrect legal standard and substituted its judgment for that of the trial court, we reverse the judgment of the court of appeals.

## III. Conclusion

¶51 For the foregoing reasons, we reverse the judgment of the court of appeals.