23CA1817 Peo in Interest of JKP 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1817 Weld County District Court No. 19JV765 Honorable W. Troy Hause, Judge The People of the State of Colorado, Appellee, In the Interest of Jay. P., Jae. P., and J.S., Children, and Concerning K.P., Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE SULLIVAN Fox and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee Josi McCauley, Guardian Ad Litem Ainsley Bochniak, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect action, K.P. (mother) appeals the juvenile court’s judgment terminating her parent-child legal relationships with Jay. P., Jae. P., and J.S. (the children). We affirm. I. Background ¶ 2 The Weld County Department of Social Services (the Department) filed a petition in dependency and neglect regarding Jay. P. in 2019. ¶ 3 The juvenile court granted temporary custody of Jay. P. to the Department and issued a protective order requiring mother to (1) attend supervised family time a minimum of three times per week and (2) comply with monitored sobriety, a substance abuse evaluation, and any recommended treatment. Soon after, the Department also took temporary custody of mother’s other two children, Jae. P. and J.S., adding them to this case. ¶ 4 The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for mother. ¶ 5 Over three years later, the Department moved to terminate the parental rights of mother and the children’s fathers. At the termination hearing, the court heard testimony from a clinical 
2 psychologist who was qualified as an expert witness; a Weld County permanency caseworker; and mother. ¶ 6 After hearing the testimony, the juvenile court terminated the parental rights for all fathers and mother, specifically finding that there were no less drastic alternatives. Mother appeals. II. Analysis ¶ 7 Mother argues that the juvenile court erred by rejecting the less drastic alternative of an allocation of parental responsibilities (APR) judgment in favor of the foster parents, or, in the alternative, denying termination as to mother. We perceive no error. A. Standard of Review and Applicable Law ¶ 8 Whether a juvenile court properly terminated a parent’s parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. “We review the juvenile court’s findings of evidentiary fact . . . for clear error and accept them if they have record support.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. But we review de novo the juvenile court’s legal conclusions based on those facts. See id. at ¶ 8. The juvenile court, as the trier of fact, determines the sufficiency, 
3 probative effect, and weight of the evidence, and assesses witness credibility. People in Interest of A.J.L., 243 P.3d 244, 249–50 (Colo. 2010). ¶ 9 As relevant here, terminating parental rights under section 19-
3-604(1)(c), C.R.S. 2023, requires that the juvenile court find, by clear and convincing evidence, that (1) the children are adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent is unlikely to become fit within a reasonable period of time. S.R.N.J-
S., ¶ 8. A “reasonable time” is not indefinite. People in Interest of S.Z.S., 2022 COA 133, ¶ 25. ¶ 10 The juvenile court must consider less drastic alternatives to termination and base its decision on the best interests of the children, giving primary consideration to the children’s physical, mental, and emotional conditions and needs. § 19-3-604(3); People in Interest of Z.M., 2020 COA 3M, ¶ 29. In making this determination, the court may consider various factors, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child, People in Interest of A.R., 2012 COA 
4 195M, ¶ 38, and whether the caregiver favors adoption rather than an APR, People in Interest of S.N-V., 300 P.3d 911, 920 (Colo. App. 2011). This determination is “influenced by a parent’s fitness to care for [the] child’s needs.” A.R., ¶ 38. ¶ 11 The consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. A.M., ¶ 40. “As long as the trial court’s findings conform to the statutory criteria for termination and are adequately supported by evidence in the record, a reviewing court may reasonably presume that, in the absence of any indication in the record to the contrary, the trial court considered and eliminated less drastic alternatives.” Id. at ¶ 41. B. Application of Statutory Factors 1. Previously Adjudicated Dependent and Neglected ¶ 12 Mother does not dispute that the children were previously adjudicated dependent and neglected. 2. Compliance With Treatment Plan ¶ 13 We conclude that the record supports the juvenile court’s finding that mother was not compliant with her treatment plan. 
5 ¶ 14 The court adopted a treatment plan that required mother to (1) cooperate with and maintain contact with the Department; (2) learn additional parenting skills to provide the children with appropriate care and discipline, including attending all family time; (3) address substance abuse issues; (4) cooperate in any ongoing criminal case, including following court orders; and (5) address mental health issues. ¶ 15 We acknowledge that mother made great strides in addressing what she needed to do to become a fit parent. However, testimony from the permanency caseworker showed that mother ultimately did not successfully comply with her treatment plan. See § 19-3-
604(1). ¶ 16 The caseworker testified, for example, that mother failed to maintain month-to-month contact with the Department. The caseworker also testified that while mother demonstrated good parenting skills, she attended family time visitation inconsistently. The caseworker further explained that mother had made extensive efforts to address her substance use, even checking herself into inpatient treatment facilities, but she was ultimately unsuccessful and noncompliant at the time of the termination hearing. The 
6 caseworker noted that mother’s three most recent test results were all positive for fentanyl. The caseworker also testified that mother was noncompliant with criminal matters because she had an active warrant out for her arrest. Finally, the caseworker testified that mother had not adequately addressed her mental health issues, in part, because she had not completed individual trauma therapy as recommended in her evaluations. ¶ 17 Given all of this, the record supports the juvenile court’s finding that mother was not compliant in multiple areas of her treatment plan, satisfying the second statutory factor. § 19-3-
604(1)(c). 3. Unfitness ¶ 18 We also conclude that the record supports the juvenile court’s finding that mother was not fit to meet her children’s physical, mental, and emotional needs and conditions. ¶ 19 Mother admitted that in her current state she was not fit enough to be a part of her children’s lives. She acknowledged that to participate in the children’s lives in the future, such as attending school events, she would first need to prove that she was fully sober 
7 and stable while consistently showing awareness of her children’s needs. ¶ 20 The caseworker’s testimony further supports the court’s finding regarding mother’s unfitness. The caseworker testified to the negative impact on the children when mother failed to consistently attend family time. And as discussed above, the caseworker testified that mother had not complied with monitored sobriety. The caseworker also testified that, although mother successfully graduated from one inpatient treatment program, she was unsuccessfully discharged from two others and was later discharged from a sober living program for noncompliance. As to mental health issues, the caseworker testified that although mother underwent several mental health evaluations, the caseworker was unable to confirm the current nature of mother’s treatment. The caseworker further testified that mother’s active warrant was especially concerning because, once arrested, mother would be removed as a caregiver. ¶ 21 This testimony supports the court’s finding that mother was an unfit parent at the time of the hearing, satisfying the third statutory factor. § 19-3-604(1)(c). 
8 4. Reasonable Period of Time to Achieve Fitness ¶ 22 The record also supports the juvenile court’s finding that mother was unlikely to become fit within a reasonable time. ¶ 23 The caseworker testified that the goal in an expedited permanent placement case, such as here, is to find the children a permanent placement within one year of the case being filed. See generally § 19-1-102(1.6), C.R.S. 2023 (stating children under the age of six who have been removed from their homes should be “placed in permanent homes as expeditiously as possible”). Despite that goal, this case was nearly four years old when the termination hearing took place. Mother testified that, over that period, she at times did well in complying with her treatment plan but at other times relapsed; she was only thirty-seven days sober at the time of the hearing. ¶ 24 The caseworker testified that, even if mother complied with the treatment plan perfectly, it would take eight to eighteen months for her to become fit — an inappropriate amount of time for the children to continue waiting. The children were ten, eight and four at the time of the hearing. The clinical psychologist testified that the children had become bonded to their foster parents; the 
9 children had been living with them for approximately four years at that point, almost Jay. P.’s entire life. The two oldest children, Jae. P. and J.S., both expressed that they wished to be adopted by their foster parents.
1 ¶ 25 Accordingly, the record supports the juvenile court’s finding that mother was unlikely to become fit within a reasonable time, satisfying the final statutory factor. § 19-3-604(1)(c). C. Less Drastic Alternatives ¶ 26 Because the juvenile court’s findings under each of the statutory termination factors have record support, we may presume, absent any indication in the record to the contrary, that the court considered and eliminated the less drastic alternatives urged by mother on appeal — denial of the Department’s motion to terminate or an APR to the children’s foster parents. A.M., ¶ 41. ¶ 27 In fact, the record confirms that the court expressly considered and rejected the latter. The court found that an APR to the foster parents was not possible because (1) the foster parents “have indicated that they are not open [to] or interested” in an APR, 1 Due to her age, the Department did not ask the youngest child, Jay. P., about her placement preference. 
10 and (2) even if they were, an APR was not in the children’s best interests given “the lack [of] permanency that they have encountered, and the fact that [m]other has at times done well and then relapsed.” See id. at ¶ 27 (a viable less drastic alternative “must be in the child’s best interests,” not merely “adequate”). The court explained that the “absolutely worst option” for the children would be “for a parent to come in and out of their lives periodically, which would not ever allow them to settle into a permanent home.” ¶ 28 The testimony elicited at the termination hearing, summarized above, supports the court’s second reason. The record also supports the court’s first reason. The caseworker testified that she had discussed the difference between adoption and an APR “[e]xtensively” with the children’s foster parents. The foster parents stated that they wanted to adopt the children. See S.N-V., 300 P.3d at 920 (considering caregiver’s preference for adoption over an APR when evaluating less drastic alternatives). Based on the foster parents’ unwillingness to consider an APR, and after exhausting other potential options, the caseworker testified that she knew of no less drastic alternative to termination. 
11 ¶ 29 Accordingly, the record supports that the court considered and eliminated the less drastic alternatives urged by mother. D. Department Policy ¶ 30 Finally, mother argues that the Department has a policy of refusing to continue a case regarding one parent if it is simultaneously seeking to terminate parental rights as to the other parent or parents. She argues that this policy fails to consider her individual parental rights and results in the Department failing to consider available less drastic alternatives to termination. ¶ 31 We need not address the existence or propriety of this alleged policy. Even if such a policy exists, the record supports the juvenile court’s findings on each of the statutory criteria for termination of mother’s rights, including that mother was unlikely to become fit within a reasonable time. And as discussed, the record supports that the court considered and eliminated less drastic alternatives as to mother. III. Disposition ¶ 32 We affirm the judgment. JUDGE FOX and JUDGE GROVE concur.