24CA0535 Peo in Interest of EW 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0535
El Paso County District Court No. 22JV30413
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.W., a Child,

And Concerning R.A.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

Kenneth Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dependency and neglect proceeding, R.A. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with E.W. (the child).  Mother's sole contention on appeal is that the court erred by finding that no less drastic alternative to termination existed.  We affirm.

## I.     Background

¶ 2     In December 2022, the El Paso County Department of Human Services (Department) received reports of concern that the child had been born with substance exposure and exhibited severe withdrawal symptoms, as well as concerns that the parents were abusing substances.  Based on these reports, the Department initiated a dependency and neglect proceeding.

¶ 3     The juvenile court placed the child with a maternal cousin as a kinship placement and the child remained with her for the remainder of the proceeding.

¶ 4     Meanwhile, the parents admitted the allegations in the petition and the child was adjudicated dependent and neglected.  Due to the Department requesting additional time to amend the proposed treatment plans, and counsel requesting additional time to review the amendments, the court adopted treatment plans for the parents

six months after adjudication.  Referrals for treatment services, however, were available to the parents before adjudication occurred.

¶ 5     Later, the Department moved to terminate parental rights.  A termination hearing was held over two days, and, at the conclusion of the hearing, the court granted the motion and terminated parental rights.

## II.     Less Drastic Alternative to Termination

¶ 6     Mother contends that the juvenile court erred by not finding that there was a less drastic alternative to termination of parental rights when the child was placed with a maternal relative who could have provided permanency through APR or guardianship.  We disagree.

### A.     Standard of Review

¶ 7     Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law

that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 8      However, we will not disturb the court's factual findings and conclusions when they are supported by the record.  *Id.* at ¶ 32; *see also A.M.*, ¶ 15.  The credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions to be drawn from it are within the court's discretion.  *A.M.*, ¶ 15.

### B.     Applicable Law and Standard of Review

¶ 9      The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 10      The juvenile court must consider and eliminate less drastic alternatives before terminating parental rights.  *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986).  When making this determination, the court must give primary consideration to the

child's physical, mental, and emotional conditions and needs.  *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35.

¶ 11    When deciding whether long-term or permanent placement with a relative or other person is a viable less drastic alternative to termination, the court may consider various factors including whether a permanent placement prefers adoption rather than an allocation of parental responsibilities (APR).  *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31.

¶ 12    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs.  *A.M.*, ¶ 27.  Rather, the proposed alternative must be the "best" option for the child.  *Id.* Therefore, if the court considers a less drastic alternative but finds that termination is in the child's best interests, it must reject the proposed alternative and order termination.  *Id.* at ¶ 32.  Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption. *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 13    When the juvenile court considers a less drastic alternative and still determines that the termination of parental rights is in the child's best interests, we are bound to affirm that decision if the

court's findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## C.    Analysis

¶ 14    Here, giving primary consideration of the child's physical, mental, and emotional conditions and needs, the juvenile court found that there were no less drastic alternatives to termination. It also found there was "no evidence before the [c]ourt to find that an APR or [relative guardian assistance program (RGAP)] would be an appropriate less-drastic alternative to meet [the child's] best interests."

¶ 15    The court further found mother was unfit, that the problems which led to initiation of the case still existed at the time of the termination and mother had not reasonably complied with her treatment plan. There is record support for the court's findings. Notably, mother also does not challenge these findings.

¶ 16    Mother asserts the kinship placement's testimony revealed she did not understand the differences between the permanency options typically available in a dependency and neglect case. Because of this, she argues it is "clear that there were less drastic alternatives"

available and the court could have ensured permanency for the child through APR or RGAP.

¶ 17    True, the kinship placement's testimony revealed she was unsure in the different permanency options available.  Nevertheless, she testified she would like the court to terminate parental rights "so we can move forward with where [the child] is going permanently as she's over a year old and kind of not much has changed."

¶ 18    And, while the court *may* consider whether a potential permanent placement prefers adoption over an APR, the primary consideration in eliminating less drastic alternatives is the child's physical, mental, and emotional conditions and needs.  *See* § 19-3-604(3); *Z.M.*, ¶ 31; *K.B.*, ¶ 35.  Here, taking those primary considerations into account, the court explicitly found there were no less drastic alternatives available and termination was in the child's best interests.

¶ 19    In addition, the caseworker testified, and the court found credible, that she believed it was in the child's best interests to terminate parental rights given that mother had essentially not engaged in any component of her treatment plan.  Mother's

communication with the Department was sporadic and at times nonresponsive. She was referred to multiple providers to complete a substance abuse evaluation, even before her treatment plan was entered, but never completed an evaluation or treatment. She also had four referrals to family time providers but missed most of her visits with the child, causing her to be discharged from at least three providers for noncompliance.

¶ 20 Finally, Mother was not employed at the time of the termination hearing and reportedly homeless. And despite referrals being in place for nearly the entirety of the case, she never engaged with life skills or family preservation services.

¶ 21 There is record support for the court's findings, and the record shows that the court considered and eliminated less drastic alternatives. *B.H.*, ¶ 80.

### III. Disposition

¶ 22 The judgment is affirmed.