24CA1818 Peo in Interest of D'ASJ 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1818
Weld County District Court No. 22JV28
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D'A.S.J. a Child,

and Concerning D.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Graham* and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     D.C. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with D'A.S.J. (child). We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services (Department) filed a petition in dependency and neglect based on allegations that mother tested positive for methamphetamine at birth and the child experienced withdrawal symptoms.  The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for mother.

¶ 3     Over two years later, the guardian ad litem moved to terminate mother's parental rights for abandonment and dependency and neglect under sections 19-3-604(1)(a)(I) and (c), C.R.S. 2024. Following a contested hearing, the juvenile court terminated mother's parental rights on both grounds.

## II.     Standard of Review

¶ 4     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We review de novo the

proper legal standard that applies in the case and the application of that standard to the particular facts. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 5 However, we review the court's factual findings for clear error and will not disturb them when they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. "The credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are within the discretion of the trial court." *A.M.*, ¶ 15.

¶ 6 Abandonment

¶ 7 Mother contends that the juvenile court erred in terminating her parental rights based on abandonment because the evidence suggested that she sought continued involvement in the child's life. We discern no basis for reversal.

¶ 8 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that a child has been adjudicated dependent or neglected and has been abandoned by the parent. § 19-3-604(1)(a). Abandonment occurs when a parent has "surrendered physical custody of the child for a period of six months or more and [has] not manifested during such period the

2

firm intention to resume physical custody of the child or to make permanent legal arrangements for the care of the child." § 19-3-604(1)(a)(I).

¶ 9 Abandonment is primarily a question of intent and may be determined by the parent's actions and words. *People in Interest of A.D.*, 56 P.3d 1246, 1248 (Colo. App. 2002). In determining whether a child has been abandoned, the circumstances must be viewed in light of the child's best interests. *Id.* "[P]articipation in the involuntary proceeding does not in and of itself obviate termination on the basis of abandonment. . . . A parent who wishes to maintain the benefits of a parental relationship must bear the burden of parental responsibilities." *Id.* at 1248-49.

¶ 10 Here, the juvenile court determined that "mother surrendered physical custody for a period of at least six months and has not manifested a firm intention to resume physical custody of the child or to make permanent legal arrangements for the care of the child." The court found that although mother participated early in the case, she failed to attend family time without good cause and she had no relationship with the child. The record supports the court's findings.

¶ 11 Prior to the child's placement in foster care, mother arranged for him to stay with a friend because mother had an active warrant. After mother's arrest, the friend was no longer willing to care for child and the Department placed the child with the foster family. Mother made no further attempts to arrange for the care of the child.

¶ 12 Mother's only consistent family time occurred early in the case while she was at an inpatient treatment facility. However, that stay was interrupted by another arrest. Mother was allowed to return to the facility, but she was unsuccessfully discharged one month later and did not appear for a second treatment intake. The caseworker repeatedly attempted to call, text, and email mother to re-engage her in family time, but received no response. Mother last participated in in-person family time fourteen months before the termination hearing and in virtual family time eight months before the termination hearing.

¶ 13 The record shows that the caseworker tried to re-establish a relationship between mother and the child but was ultimately unsuccessful due to mother's lack of communication. The caseworker testified that she contacted all of mother's former phone

numbers; she conducted monthly checks in Colorado courts for updated information; she spoke with father regularly about mother's whereabouts; and she checked mother's social media. Additionally, the caseworker attempted to see mother any time she was in jail and gave mother a card with the caseworker's contact information at every meeting. Despite these efforts, mother could not be located for eight months immediately preceding the termination hearing. And she failed to appear for the termination hearing. Mother's attorney conceded that mother had last seen her child "approximately eight months or seven months ago."

¶ 14    Because the record supports the juvenile court's abandonment findings, we will not disturb them.

### A.    Less Drastic Alternatives

¶ 15    Mother argues that the juvenile court erred by terminating her parental rights under section 19-3-604(1)(c). However, mother's rights were also terminated under section 19-3-604(1)(a). Unlike subsection (1)(c), subsection (1)(a) does not require a juvenile court to consider and eliminate less drastic alternatives. *See People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19 (noting consideration of less drastic alternatives is implicit in termination criteria under

section 19-3-604(1)(c)). Because we affirm the termination of mother's rights under section 19-3-604(1)(a), we need not address this contention. *People in Interest of C.Z.*, 2015 COA 87, ¶ 59 (concluding that, because court terminated parental rights under section 19-3-604(1)(b), it was not required to consider whether the department made reasonable efforts to reunite the family under section 19-3-604(1)(c)); *see also People in Interest of D.C-M.S.*, 111 P.3d 559, 561 (Colo. App. 2005) ("[I]t would be absurd to construe the statutory language to mean that termination is permitted if one statutory criterion is met but not if more than one is met.").

### III.   Disposition

¶ 16     The judgment is affirmed.

JUDGE GRAHAM and JUDGE BERNARD concur.