24CA1832 Peo in Interest of BW 04-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1832
Jefferson County District Court No. 20JV371
Honorable Lindsey Van Gilder, Judge

The People of the State of Colorado,

Appellee,

In the Interest of B.W., a Child,

and Concerning K.V-D.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

Kimberly Sorrells, County Attorney, Sarah Oviatt, Senior Assistant County Attorney, Golden, Colorado, for Appellee

Samantha Metsger, Counsel for Youth, Denver, Colorado, for B.W.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1   K.V-D. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with B.W. (the youth). We affirm the judgment.

## I.   Background

¶ 2   The Jefferson County Division of Children, Youth, and Families (Division) filed a petition in dependency and neglect regarding the then-eleven-year-old youth. The petition alleged that mother had emotionally and physically abused the child. It contained no allegations as to father, who had never met the youth and had been serving a prison sentence.

¶ 3   The juvenile court adjudicated the youth dependent or neglected. The court adopted a treatment plan for father requiring that he, among other things, (1) complete a mental health assessment and follow all recommendations; (2) complete an anger management assessment and follow all recommendations; (3) attend family time with the youth; and (4) understand and demonstrate how to support the youth and meet his developmental and emotional needs. The treatment plan was subsequently amended to remove the anger management assessment and instead have father address this issue in individual therapy.

1

¶ 4 The Division later moved to terminate father's parental rights. After a hearing, held nearly four years after the filing of the petition, the court terminated father's parent-child legal relationship with the youth.

## II. Additional Time

¶ 5 Father argues that the juvenile court erroneously found that he could not become a fit parent within a reasonable time. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 6 "Once a treatment plan has been devised for a parent, a court may only terminate parental rights when, among other things, the court finds that parent unfit and unable to become fit in a reasonable time." *People in Interest of L.M.*, 2018 COA 57M, ¶ 27. An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2), C.R.S. 2024.

¶ 7 When determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider

2

whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 8 What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the child. *Id.* at ¶ 25. A "reasonable time" is not an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶¶ 24-25 (citing *People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (even "increased compliance" over the course of a case may not justify additional time)).

¶ 9 Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12,

¶ 10. We review de novo the juvenile court's legal conclusions. *See id.*; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

### B. Analysis

The juvenile court found that father could not become fit to parent the youth in a reasonable time. In doing so, the court found that the case had been open for nearly four years and yet father had not addressed his mental health or anger and he lacked an ability to regulate his emotions. The court also found that father engaged in only four therapeutic family time sessions in four years, that there was significant inconsistency in his engagement with therapeutic family time, and that attempts to engage him in family time were unsuccessful. The court further found that the youth's "needs are extraordinarily high and, frankly, complicated." The court acknowledged father's recent progress but found that father had not demonstrated an understanding of the youth's specific

physical, mental health, and emotional needs. The record supports the court's findings.

¶ 12    During the four years that the case was open, father did not successfully address the issues that would render him fit. The caseworker testified that father had not completed a mental health assessment nor engaged in individual therapy. And because father did not start individual therapy, he never addressed his anger management issues. Father regularly became dysregulated and angry with both caseworkers assigned to this case, causing concern for the caseworkers' safety. The caseworker reported that throughout the case, father's demeanor became escalated, and he did not show an ability to de-escalate or control his frustration.

¶ 13    Because father had no pre-existing relationship with the youth when the case opened, the parent-child relationship began with therapeutic visits. The therapist testified that father inconsistently attended family time, that father behaved inappropriately toward the therapist, and that the therapist could not redirect father during family time. The last therapeutic family time session, which occurred a month prior to the termination hearing, lasted only ten minutes. The youth ended the session early because the therapist

was unable to redirect father when he spoke of inappropriate topics. Thereafter, the youth requested additional time and space before re-engaging with father, and there were no more family time visits. In total, father participated in only four sessions with the youth over a period of four years.

¶ 14    The record also shows that the youth had extraordinarily high needs. The caseworker testified that the youth's emotional and behavioral needs were more demanding than a typical youth his age, and he suffered from attention deficit hyperactivity disorder, post-traumatic stress disorder, and a mild intellectual disability. The youth's therapist testified that the youth's needs are "incredibly high in terms of his therapeutic needs" and that he presents at a much lower developmental age. She stated that in engaging with the youth, it was "important to be incredibly trauma-informed, incredibly important to have proper psychoeducation on the impacts of trauma and his attachment and how he conceptualizes and processes things." However, Father minimally engaged in family intervention services, which were designed to teach him how to be trauma informed and to appropriately handle the youth's needs.

¶ 15    The caseworker, who was qualified as an expert in child protection casework, testified that she did not believe there was a substantial probability that anything in father's condition would change within a reasonable time.

¶ 16    Based on the evidence in the record, and considering the youth's physical, emotional, and mental health needs, the juvenile court did not err when it found father could not become fit within a reasonable time.

### III.    Disposition

¶ 17    We affirm the judgment.

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.