25CA0791 Peo in Interest of ARL 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0791
El Paso County District Court No. 23JV30831
Honorable Diana K May, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.R.L., Jr., a Child,

and Concerning P.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Kenny Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, P.S. (mother) appeals the judgment terminating her parent-child legal relationship with A.R.L., Jr. (the child).  We affirm.

## I.     Background

¶ 2     The El Paso County Department of Human Services initiated this case based on substance use by mother and concerns about an unsafe environment for the child.  Early in the case, the child was placed in the home of his maternal cousin and maternal cousin's wife (maternal cousins), where he remained for the rest of the case.

¶ 3     Mother agreed to a deferred adjudication, and the juvenile court adopted a treatment plan for her.  A year later, the Department moved to revoke the deferred adjudication.  Following an evidentiary hearing, the court revoked the deferred adjudication and adjudicated the child dependent and neglected.

¶ 4     The Department soon moved to terminate mother's parental rights.  After holding an evidentiary hearing, the court terminated mother's parent-child legal relationship with the child.

## II.     Less Drastic Alternatives

¶ 5     Mother contends that the juvenile court erred by terminating her parental rights when an allocation of parental responsibilities

(APR) to maternal cousins was a viable less drastic alternative to termination. We disagree.

### A. Legal Framework and Standard of Review

¶ 6    A juvenile court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 7    Before terminating parental rights under section 19-3-604(1)(c), the court must also consider and eliminate less drastic alternatives. *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *see L.M.*, ¶ 29.

¶ 8    A juvenile court may consider various factors when determining the viability of a less drastic alternative, including whether an ongoing relationship with the parent would be beneficial or detrimental to the child, *L.M.*, ¶ 29, and whether the alternative

2

placement option provides the child with adequate permanence and meets the child's needs, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 9     For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. Under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.     Analysis

¶ 10    The juvenile court determined that no less drastic alternative was available and that termination was in the child's best interests. While noting that the child "felt [i]nsecure" at the beginning of his placement with maternal cousins, the court found that he felt secure and safe there at the time of termination. The court found that the then-eight-year-old child was having his emotional, physical, and mental needs met in a caring, stable environment in

3

which he had resided for nearly eighteen months.  *See T.E.M.*, 124 P.3d at 910.

¶ 11    The testimony of the caseworker, the sole witness at the hearing whose testimony the court found credible, supports the court's findings.  The caseworker opined that, while the child experienced trauma in mother's care, he is now "settled with the fact that he is safe" and "knows what to predict day after day."  The child considered his maternal cousins to be parental figures and considered his cousins' son to be his brother.  The caseworker opined that all the child's needs were being met in his placement.  For example, the child had been attending therapy at the time of termination.

¶ 12    The court also premised its determination, in relevant part, on mother's "complete lack of engagement."  The record shows that mother did little to engage in treatment or to otherwise comply with her treatment plan.  Significantly, mother had not seen the child for at least one year and three months by the time of the termination hearing.  According to the caseworker, mother expressed no desire to "get [her] son back" and instead insisted to the Department that the child should stay with maternal cousins.

¶ 13    Notwithstanding, mother contends that an APR to maternal cousins would have been in the child's best interests because it would have preserved his "attached relationship" to mother.  We are not persuaded.  The court specifically found, with evidentiary support, that an APR would not be in the child's best interests because it would have created anxiety, "emotional trauma," and "[i]nstability" for the "now . . . stable" child.  *See L.M.*, ¶ 29 (the court may consider whether an ongoing relationship with the parent would be beneficial or detrimental to the child); *see also People in Interest of Z.M.*, 2020 COA 3M, ¶ 30 ("Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption.").  According to the caseworker, the uncertainty surrounding mother's whereabouts created "turmoil" and "a little bit of anxiety" for the child.

¶ 14    To the extent that mother contends termination is unwarranted because the maternal cousins were previously amenable to an APR, we are unpersuaded.  Mother does not direct us to any authority to support this position.  And, while the caseworker acknowledged that the maternal cousins' position changed over time, at the time of the termination, the maternal

cousins preferred adoption to avoid any "ongoing turmoil" that an APR might cause. *See Z.M.*, ¶ 31 (noting that the court may consider whether the placement favors adoption rather than an APR).

¶ 15    Because the record supports the court's findings, we affirm its determination. *See B.H.*, ¶ 80.

III.   Disposition

¶ 16    The judgment is affirmed.

JUDGE FOX and JUDGE BROWN concur.

6