24CA1154 Peo in Interest of BBN 11-07-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1154
Alamosa County District Court No. 23JV30009
Honorable Amanda C. Hopkins, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of B.B.N. a Child,

and Concerning U.E.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

---

Jason T. Kelly, County Attorney, Alamosa, Colorado, for Appellee

Jenna L. Mazzucca, Guardian ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Respondent-Appellant

¶ 1     U.E.M. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with B.B.N. (the child).  We affirm.

## I.     Relevant Facts

¶ 2     On May 27, 2023, the child was born with controlled substances in his system.

¶ 3     Four days later, the Alamosa County Department of Human Services filed a petition in dependency and neglect regarding the child.  The juvenile court granted temporary legal custody to the Department, and the child was placed with paternal uncle.

¶ 4     In July 2023, after admitting that the child was born in an injurious environment, the juvenile court adopted a treatment plan for mother.  Under the plan, mother had to complete a substance abuse evaluation; enroll in and attend substance abuse counseling; comply with the counselor's recommendations; actively participate in completing the program; and submit drug screening samples as requested by the counselor.  She also agreed to enroll in the Dependency and Neglect System Reform court, which offered frequent hearings to provide her with support and information on the Department's services.

¶ 5　　On April 3, 2024, the Department moved to terminate mother's parental rights, asserting that she had not reasonably complied with her treatment plan.

¶ 6　　About a month later, the juvenile court held an evidentiary hearing to address the termination motion. At the onset, mother asked for and was denied a continuance so that she could admit herself into a detox facility. At the end, the court made the following oral findings:

- The child was adjudicated dependent and neglected.

- Although an appropriate treatment plan was adopted, mother had not shown any compliance with it or made any improvements in overcoming her substance abuse problems.

- The Department made significant efforts to provide mother with services to support her successful completion of the treatment plan.

- The caseworker (who was the sole witness at the hearing) made repeated attempts, as did other treatment providers, to engage mother in the process. Mother's limited responses never revealed whether

"there [were] other things that would have been helpful to her."

- Despite frequently confirming to the court her intention to enter a detox facility, mother failed to do so.

- Mother's unaddressed substance abuse issues would affect her ability to care for the child.

- Due to mother's infrequent visits with the child, no post-birth relationship was ever formed between them. The visits were "very distressing" for the child, who reacted to mother as a stranger.

- Mother was unfit and not in a place to successfully or safely parent the child in a reasonable timeframe.

- Termination of mother's parental rights was the only viable option to ensure the child's well-being, as there were no less drastic alternatives to termination.

- Paternal uncle was doing an "excellent job" caring for the child. Although he was originally willing to consider an allocation of parental responsibilities, uncle was no longer supportive of that alternative because mother

had made no effort to establish a relationship with the child.

Based on these findings, the court terminated mother's parental rights.

¶ 7     On June 5, 2024, the juvenile court entered a written judgment tracking its oral ruling.

## II.     Legal Framework and Standard of Review

¶ 8     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 9.

¶ 9     Whether a juvenile court properly terminated parental rights, including whether the Department made reasonable efforts, presents a mixed question of fact and law, *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, because it involves applying the termination statute to evidentiary facts, *People in Interest of A.M. v.*

*T.M.*, 2021 CO 14, ¶ 15.  In particular, the ultimate determination of whether the Department satisfied its reasonable efforts obligation is a legal question that we review de novo.  *A.S.L.*, ¶ 8.

¶ 10     We will not disturb the juvenile court's factual findings if the evidence in the record supports them.  *S.Z.S.*, ¶ 10.  The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from the evidence are all matters within the court's province.  *Id.*

### III.     Reasonable Efforts

¶ 11     Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the child.  More specifically, she argues that the Department should have provided her with a phone to maintain consistent contact and a referral to a detox facility to address her substance abuse issues.  We disagree.

### A.     Applicable Law

¶ 12     Before a court may terminate parental rights under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate the parent and reunite the

family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" for a child in out-of-home placement, and the reasonable efforts standard may be satisfied if the department provides adequate services consistent with section 19-3-208, C.R.S. 2024. *S.Z.S.*, ¶ 13; *see also* § 19-1-103(114). Section 19-3-208(2)(b)(III) requires that a department provide information and referral services to available public and private assistance resources, but only "as determined necessary and appropriate by individual case plans."

¶ 13 The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

## B. Analysis

¶ 14 Mother argues that the Department failed to address her communication barrier by not providing her with a phone. We are not persuaded.

6

¶ 15    We begin by pointing out that although county departments may provide phone services to parents in dependency and neglect cases, nothing in section 19-3-208 *requires* such a service as part of the obligation to make reasonable efforts.  While providing a cellphone may be an appropriate component of reasonable efforts in some cases, mother points to no specific facts to support the conclusion that she did not have access to a phone or that such access would have materially impacted her compliance with the treatment plan or the administration of the case.  Indeed, the record illustrates that mother had access to a phone throughout the proceeding.

¶ 16    In July 2023, mother reported having a phone.  In a September hearing, mother's attorney notified the magistrate of communication difficulties with mother.  Mother answered that she was experiencing periods of not speaking to anyone, but did not explain why.  And when the magistrate asked mother if she needed any assistance, she mentioned that she had a working phone.

¶ 17    In fact, during an October hearing, mother appeared by phone.  In response to concerns about her lack of communication, she assured the juvenile court that she had a reliable phone.  She

added that she needed to address an outstanding warrant before she could consistently contact the caseworker.

¶ 18     At a hearing in January 2024, mother told the magistrate that her phone had been stolen but insisted that she would have a new one later that day or be able to borrow one.

¶ 19     The next month, mother acknowledged that she had not recently spoken to the caseworker.  She stated that she received a text message from the caseworker but had forgotten to respond.  She also confirmed her current telephone number with the caseworker.

¶ 20     In March 2024, mother indicated that she had a working phone when she said that she thought she had texted the caseworker about scheduling a meeting.

¶ 21     In the weeks following, mother failed to appear or participate in any further court hearings.  At a late April hearing, the caseworker recalled a recent phone conversation with mother, during which mother inquired about her outstanding warrant, the process of terminating her parental rights, and possible treatment. The caseworker informed the magistrate that all follow-up attempts to reach her had gone unanswered.

¶ 22    At the termination hearing, the caseworker testified that proactive steps were taken to address the communication challenges with mother.  Throughout the proceedings, mother had access to the caseworker's telephone number.  As well, the caseworker tried to maintain contact with mother through the most up-to-date telephone number available.  The caseworker also testified that while the Department initially offered mother a phone, the offer never became a "topic of conversation" after that.

¶ 23    In sum, mother did not request a phone from the Department. And the record establishes that she either possessed a working phone or had independent means to access one but did not remain in communication with the caseworker.  Because the record supports the court's finding that the Department made reasonable efforts to address her communication barrier, we will not disturb it. *See S.Z.S.*, ¶ 10.

¶ 24    Nor are we persuaded by mother's related argument that the Department should have placed a referral for her to enter a detox facility.  The caseworker testified that mother "was dead set" on admitting herself to a specific detox center.  At numerous court proceedings, mother stated that she intended to report to the detox

center that day. Given mother's determination to go to a specific detox facility on her own, the caseworker did not believe it was necessary to make a referral for her. Based on this record, we cannot say that the Department failed to make reasonable efforts in this regard. *See* § 19-3-208(2)(b)(iii).

¶ 25 Because the juvenile court properly concluded that the Department made reasonable efforts we affirm the termination judgment. *See A.S.L.*, ¶ 8; *see also A.M.*, ¶ 15.

IV. Disposition

¶ 26 The judgment is affirmed.

JUDGE TOW and JUDGE PAWAR concur.