25CA2102 Peo in Interest of LR-D 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2102
Weld County District Court No. 24JV44
Honorable Troy Hause, Judge

The People of the State of Colorado,

Appellee,

In the Interest of L.R-D., a Child,

and Concerning R.D.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1      R.D. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with L.R-D. (the child).  He argues that the court erred by failing to consider an allocation of parental responsibilities (APR) as a less drastic alternative to termination of his parental rights.  We disagree and therefore affirm.

## I.     Background

¶ 2      The Weld County Department of Human Services (Department) filed a petition in dependency and neglect after receiving reports that the two-week-old child had been born exposed to drugs, was underweight, and was exhibiting symptoms of drug withdrawal. The court granted temporary legal custody of the child to the Department, which placed her with maternal great-aunt.  Father admitted the petition, and the court adjudicated the child dependent or neglected and adopted a treatment plan for father.

¶ 3      Father's treatment plan required him to (1) maintain contact with case professionals and sign releases of information; (2) maintain employment or accept public assistance to support himself and the child; (3) complete a parenting class and display appropriate parenting skills during parenting time; (4) complete

1

substance abuse and mental health evaluations and follow any recommended therapy; and (5) comply with random urinalysis testing.

¶ 4     Eleven months after the court adopted the treatment plan, the child's guardian ad litem (GAL) filed a motion to terminate father's parental rights. The GAL alleged that father had not been successful with his treatment plan and remained unfit. After a hearing, the court granted the motion. (The court terminated both parents' parental rights. Mother does not appeal the termination of her parental rights.)

## II.     Relevant Law and Standard of Review

¶ 5     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan, or the treatment plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6     Before terminating parental rights, the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of*

*A.M. v. T.M.*, 2021 CO 14, ¶ 40.  In doing so, it must give primary consideration to the child's physical, mental, and emotional conditions and needs.  *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29.  The court may consider, among other things, (1) whether an ongoing relationship with the parent would benefit the child, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011); (2) whether the child is bonded to the parent, *People in Interest of D.P.*, 181 P.3d 403, 408-09 (Colo. App. 2008); and (3) whether the alternative placement option favors adoption rather than an APR, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 7      A less drastic alternative is not viable simply because it is "adequate."  *A.M.*, ¶ 27.  It must be in the child's best interests.  *Id.*  Long-term or permanent placement with a family member, short of termination, may not be in a child's best interests if it does not provide the permanence assured by adoption or otherwise meet the child's needs.  *People in Interest of A.R.*, 2012 COA 195M, ¶ 41.

¶ 8      We review a juvenile court's less drastic alternatives findings for clear error.  *People in Interest of E.W.*, 2022 COA 12, ¶ 34, *aff'd*, 2022 CO 51.  Thus, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best

3

interests, we must affirm that decision if the court's findings have record support. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## III. Analysis

¶ 9 The court found that father's treatment plan was not successful and that he remained unfit. After "[g]iving primary consideration to the physical, mental, and emotional conditions and needs of the . . . child," the court concluded that no alternative short of termination of parental rights was in the child's best interests. In reaching this conclusion, the court considered "whether an ongoing relationship with the parent would be beneficial or detrimental to the child," and determined that there was "little to no bond or meaningful relationship" between father and the child and that an ongoing relationship would be detrimental to the child. It also considered that the alternative placement option favored adoption over APR. Finally, after considering whether "permanent placement with the relative . . . would provide the adequate permanency and stability for the child," it found that "[n]o alternative, other than termination, allows for permanency or flexibility in making appropriate placement decisions for the child."

¶ 10    The record shows that father had not been successful with his treatment plan and remained unfit.  (We recognize that father does not challenge the court's findings that he is unfit and will not become fit within a reasonable time.  Nevertheless, we briefly discuss this issue because "the determination of whether there is a less drastic alternative to termination will be influenced by a parent's fitness to care for [the] child."  *People in Interest of L.M.*, 2018 COA 57M, ¶ 27.)

¶ 11    The case's first permanency caseworker testified that father did not meet regularly with the caseworker.  And he did not find stable housing during the case or show that he could provide for the child.  Father attended only thirty-eight percent of the scheduled parenting time with the child and, when he did attend, he was "generally . . . extremely late."  This caseworker said that, for these reasons, it would have been inappropriate to expand father's parenting time.

¶ 12    Moreover, this caseworker testified that father never took advantage of the parenting class referral.  Father was unsuccessfully discharged from medication-assisted substance use therapy and he did not otherwise complete substance abuse

5

treatment. He did not comply with urinalysis testing. He also did not complete a mental health assessment or any therapy.

¶ 13 The first permanency caseworker concluded that father had not complied with his treatment plan and remained unfit. The second permanency caseworker similarly concluded that father did not meet most of the treatment plan objectives and remained an unfit parent.

¶ 14 The record supports the court's considerations regarding less drastic alternatives to termination. The second permanency caseworker testified that she did not observe "a strong bond or connection" between the child and parents. And she expressed concern that, without a termination of parental rights, father and the child's mother would disrupt the child's placement with maternal great-aunt. The maternal great-aunt told the second permanency caseworker that she wanted to adopt the child and was not supportive of an APR. The first and second permanency caseworkers opined that nothing short of termination of parental rights and adoption by maternal great-aunt was in the child's best interest.

¶ 15    Given this record support for the court's determination, we will not disturb it on appeal.  *See B.H.*, ¶ 80.

IV.   Disposition

¶ 16    The judgment is affirmed.

JUDGE WELLING and JUDGE LIPINSKY concur.