25CA1893 Peo in Interest of KGS 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1893
City and County of Denver Juvenile Court No. 22JV30488
Honorable Elizabeth McCarthy, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.G.S., a Child,

and Concerning S.S.O.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

James West, Office of Respondent Parents' Counsel, Longmont, Colorado, for Appellant

¶ 1     S.S.O. (father) appeals the judgment terminating his parent-child legal relationship with K.G.S. (the child).  We affirm.

## I.     Background

¶ 2     The Denver Human Services Department filed a petition in dependency or neglect concerning the then-two-year-old child.  The petition alleged, among other things, that the child's mother had been using methamphetamine and behaving erratically and that she had accused her then-partner of sexually abusing the child.  At the time, father's contact with the child was limited to two supervised visits per month under an allocation of parental responsibilities in a prior dependency and neglect case.

¶ 3     Father entered a no-fault admission to the petition, and the juvenile court adjudicated the child dependent and neglected.  The court then adopted a treatment plan requiring father to (1) complete a substance abuse evaluation, maintain sobriety, and complete substance use testing "as asked"; and (2) demonstrate safe and appropriate parenting for the child by learning to meet the child's needs, providing stable housing, and maintaining employment.

¶ 4     Nearly three years later, and more than three years after the petition was filed, the Department moved to terminate the parent-

1

child legal relationship between father and the child. After an evidentiary hearing, the juvenile court granted the motion and terminated father's parental rights. As relevant to this appeal, the court found that although father had made some progress, he had failed to comply with either component of his treatment plan and was unfit and unlikely to become fit within a reasonable time.

## II. Applicable Law and Standard of Review

¶ 5    To terminate a parent-child legal relationship, the juvenile court must find by clear and convincing evidence that (1) the child has been adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6    A treatment plan seeks to preserve the parent-child legal relationship by helping the parent overcome the problems that required government intervention. *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006). A plan is successful if it renders a parent fit or corrects the conduct or condition that led to the intervention. *People in Interest of C.A.K.*, 652 P.2d 603, 611 (Colo. 1982).

¶ 7    When a child is under six years old, as in this case, the juvenile court must consider the expedited permanency planning provisions, which require the child to be placed in a permanent home as expeditiously as possible.  *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.  In such cases, the court may not find that a parent is in reasonable compliance with, or has been successful at, a treatment plan if the parent (1) exhibits the same problems addressed in the treatment plan without adequate improvement and (2) is unable or unwilling to provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental health needs and conditions.  § 19-3-604(1)(c)(I)(B).

¶ 8    A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 9    When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may

consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the child. *Id.* at ¶ 25. But a "reasonable time" is not an indefinite time. *Id.* And even when a parent has made progress, the court is not required to give the parent additional time to become fit. *See id.* at ¶¶ 24-25.

¶ 10    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### III.    Treatment Plan Compliance

¶ 11    Father argues that the juvenile court erred by finding that he did not reasonably comply with his treatment plan. We disagree.

¶ 12    As an initial matter, father asserts that it is "unclear" whether the treatment plan was appropriate. But other than asserting that he was not involved in the issues that prompted the petition, father

does not develop any argument that the treatment plan was not appropriate. We therefore will not address the appropriateness of the plan. *People in Interest of S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address assertion not developed with legal or factual argument).

¶ 13　　As to father's compliance with the treatment plan, the juvenile court found that father failed to comply by (1) failing to complete substance use testing as requested by the Department and ordered by the court; (2) disengaging with the child's therapy; and (3) failing to secure stable housing and employment. The court also found that the child had experienced significant trauma and needed a protective caregiver who could meet her physical, mental, and emotional needs — which the court found father could not do.

¶ 14　　The record supports the court's findings. First, as noted above, father's treatment plan required him to complete substance use testing as requested. Although the caseworker did not have concerns regarding father's substance use for most of the case, that changed approximately two months before the termination hearing, when the caseworker observed a "pretty big change" in father's behavior. The caseworker testified that staff at the shelter where father was living reported that father had sent them "disturbing

messages," was abusive toward shelter staff, and had "talked about killing himself." Father also stopped cooperating or communicating with the caseworker, which was "out of the ordinary" for him.

¶ 15    Because of the caseworker's concern that this change in father's behavior could be attributable to substance use, the court ordered father to submit to urinalysis testing and hair follicle testing, but father refused. *See People in Interest of K.T.*, 129 P.3d 1080, 1082 (Colo. App. 2005) (concluding that mother's refusal to submit to urinalysis testing showed she was not committed to meeting the child's needs and was unfit); *People in Interest of M.H-K.*, 2018 COA 178, ¶ 69 n.5 (noting that father's noncompliance with court-ordered drug testing was "objectively unreasonable").

¶ 16    Second, a psychologist working with the child and father on child-parent psychotherapy testified that father also stopped engaging in therapy around the time of his behavior change. The psychologist testified that therapy was necessary because the child had experienced a significant amount of trauma. The psychologist opined that the child would "need to work through this [trauma] her whole life" and needed a caregiver who could meet these needs.

¶ 17    To address this trauma, the psychologist used a three-phase treatment approach.  After working with the psychologist for more than a year, father had not progressed past the first phase.  The psychologist explained that father still had "room to grow" in understanding how the child's trauma impacts her and in "taking accountability for his role."  But father had stopped engaging in therapy in the two months before the termination hearing and had not reengaged, despite the psychologist's efforts to reengage him.

¶ 18    Third, there was evidence that father had not secured stable housing or employment.  Although father had recently moved into an apartment, the caseworker testified that she remained concerned about father's long "pattern of [housing] instability."  About eighteen months before the termination hearing, father secured transitional housing, but he was evicted seven months later for not paying rent.  He then stayed in two shelter programs before obtaining a housing voucher that he used to find the apartment.  This history supported the court's concern that father "could lose his current housing particularly due to [his] unstable behavior of the last few months."  The caseworker also testified that father did not have stable employment, as his treatment plan required.

¶ 19    Based on this, the caseworker opined that father had not complied with his treatment plan and that the plan had not been successful in rehabilitating father.  Because the record supports this conclusion, the juvenile court did not clearly err in so finding.

## IV.    Fitness

¶ 20    For similar reasons, we reject father's contention that the juvenile court clearly erred by finding that he was unfit and could not become fit within a reasonable time.  Father argues that he was "a fit parent throughout," and that he could have addressed the issues that arose in the two months before the hearing if he had been given a short amount of additional time.  But despite noting father's progress, the juvenile court found otherwise, especially in light of the expedited permanency planning provisions.  In particular, the court found that father was "no longer engaging with [the child's] therapy which is absolutely essential for this child."

¶ 21    Again, the record supports the court's findings.  The caseworker testified that, by the time of the termination hearing, father had "disengaged from every part of [the case]."  She opined that, in light of that change, father was unfit and could not become fit in the next six months because the case had been open for three

years, father was "still in the same place," and he had not "made any progress" over the last few months. The caseworker concluded that father was unable to provide reasonable parental care for the child and that termination was in the child's best interest.

¶ 22　Thus, because the record supports the juvenile court's determinations that father was unfit and unlikely to become fit within a reasonable period of time, we discern no error.

## V.　Disposition

¶ 23　The judgment is affirmed.

JUDGE GROVE and JUDGE YUN concur.