25CA1698 Peo in Interest of XIM 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1698
Jefferson County District Court No. 24JV30171
Honorable Lindsay VanGilder, Judge

The People of the State of Colorado,

Appellee,

In the Interest of X.I.M., a Child,

and Concerning I.A.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

---

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1     I.A.M. (father) appeals the judgment terminating his parent-child legal relationship with X.I.M. (the child).  He contends that the juvenile court erred by finding that he was unlikely to become fit within a reasonable period of time.  We affirm the judgment.

## I.     Background

¶ 2     The Jefferson County Division of Children, Youth and Families filed a petition in dependency and neglect, alleging that the child had tested positive for methamphetamine and fentanyl at birth and was experiencing withdrawals.  The petition also alleged that father admitted to regularly using fentanyl and methamphetamine.

¶ 3     The juvenile court granted temporary legal custody of the child to the Division, and the child was placed with paternal relatives.  During the initial assessment, an intake caseworker spoke with father by phone and told him about the case.  But after that, the Division was unable to locate him and, therefore, served him with the petition by publication.  The court adjudicated the child dependent and neglected and adopted a treatment plan for father.

¶ 4     In the meantime, the Division continued trying to locate and engage father.  The caseworker was finally able to reach him again

months after the adjudication, and father maintained consistent communication with the caseworker for the remainder of the case.

¶ 5　　Weeks after establishing contact with father, the Division moved to terminate father's parental rights.  The juvenile court granted the motion after an evidentiary hearing.  Although the court noted that father had made some improvement, it found that he had made no progress in addressing his substance use and that he could not demonstrate sobriety in a reasonable amount of time.

## II.　Applicable Law and Standard of Review

¶ 6　　To terminate a parent-child legal relationship, the juvenile court must find by clear and convincing evidence that (1) the child has been adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025.

¶ 7　　A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent

2

provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 8 When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the child. *Id.* at ¶ 25.

¶ 9 But a "reasonable time" is not an indefinite time. *Id.* And even when a parent has made progress on a treatment plan, the court is not required to give the parent additional time to become fit. *See id.* at ¶¶ 24-25. In addition, when, as in this case, the child is under six years old when the petition is filed, the action is subject to the expedited permanency planning provisions, and the court must place the child in a permanent home as expeditiously as possible. *See id.* at ¶ 25; §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 10    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review its legal conclusions de novo. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The determination of whether a parent can become fit within a reasonable time is a factual question that we review for clear error. *S.Z.S.*, ¶¶ 25, 29; *People in Interest of A.J.L.*, 243 P.3d 244, 256 (Colo. 2010).

### III.    Analysis

¶ 11    Father does not challenge the finding that he was unfit at the time of the termination hearing. He argues only that the juvenile court erred by finding that he could not become fit in a reasonable time because he was making progress and the child could wait another six months for him to become sober. We disagree.

¶ 12    The juvenile court's finding that father's conduct or condition was unlikely to change within a reasonable period of time was based primarily on his continued use of methamphetamine and fentanyl. *See* § 19-3-604(2)(e) (requiring court to consider use of controlled substances in determining parent's unfitness, conduct, or condition). The court found that father had made no progress in

4

addressing his substance use during the thirteen months the case had been open and that the six months it would take for him to demonstrate sobriety was not a reasonable amount of time for the child, given the duration of the case and the child's young age. The court also found that father failed to make progress in other aspects of his treatment plan and had not regularly attended family time.

¶ 13 The record supports the court's findings. Father's treatment plan required him to, among other things, complete a substance use assessment and follow all recommendations, submit to random urinalysis (UA) testing, participate in family time, and provide a safe and stable environment that would meet the child's needs. The caseworker testified that father failed to make progress in nearly every aspect of this plan, even after the Division established consistent contact with him. He did not complete a substance use assessment or the paperwork to begin the intake process, despite the program's proximity to his home. He did not submit any UAs, nor did he call the UA hotline at any point in the case, despite the caseworker's attempts to help notify him when he was due to test. And while he attended some family time, he missed over half of his scheduled sessions and was late for all but one visit.

¶ 14    The caseworker opined that, given father's historical failure to engage in the case, he would need to demonstrate consistent engagement with his treatment plan for "a minimum of six months or longer" before the child's return home could be considered.

¶ 15    Father points out that he did obtain housing and reportedly had obtained employment. Indeed, the court acknowledged these improvements. But the caseworker also testified that at the time of the termination hearing, father was being evicted. And regardless of father's progress in certain areas, the court found that his continued failure to address his substance use meant that he was not likely to become fit within a reasonable amount of time. *See S.Z.S.*, ¶¶ 24, 28-29 (holding that juvenile court did not err by failing to give parent additional time to become fit, even though she had complied with parts of her treatment plan).

¶ 16    Father also argues that there was no evidence that "the child was in desperate need of permanency" and that the court could have given father an additional six months to establish sobriety. But the caseworker opined that the child needed "a stable, sober caregiver" and "permanency and consistency." She noted the child's young age and explained that the child had lived with

paternal relatives his entire life and was bonded to them and their children. In contrast, she did not believe that father and the child were bonded and opined that termination was in the child's best interests, given father's lack of engagement with his treatment plan. Moreover, as noted above, the expedited permanency planning provisions require children under the age of six to be placed in a permanent home as expeditiously as possible. § 19-1-102(1.6).

¶ 17     Finally, father suggests that he should have been given more time to comply with his treatment plan because he was not aware of the case until four months before the termination hearing. But the record indicates that father *was* aware of the case from the outset. The caseworker testified that an intake caseworker had spoken with father when the case opened to let him know about the case. The caseworker also explained that paternal relatives had told him father was aware of the case but did not want to meet with the Division because he had an open warrant. And father admitted that, before his contact with the caseworker, he knew he needed to "get [ahold] of someone from Jefferson County" to see the child.

¶ 18     In sum, father's argument effectively asks us to reweigh the evidence and substitute our judgment for that of the juvenile court,

which we cannot do.  *See S.Z.S.,* ¶ 29.  Rather, because there is record support for the juvenile court's finding that father could not become fit within a reasonable time, we cannot disturb it.  *See id.*

### IV.   Disposition

¶ 19     The judgment is affirmed.

JUDGE GROVE and JUDGE YUN concur.