25CA1886 Peo in Interest of GA 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1886
Rio Grande County District Court No. 24JV30005
Honorable Michael A. Gonzales, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of G.A., a Child,

and Concerning C.V. a/k/a C.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Ryan Dunn, County Attorney, Del Norte, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1    C.V. (mother) appeals the judgment terminating her parent-child legal relationship with G.A. (the child).  We affirm.

## I.    Background

¶ 2    The Rio Grande County Department of Social Services received a report that mother and father found their then-two-month-old child's twin brother, J.A., unresponsive and took him to a hospital.  J.A. was airlifted to Children's Hospital in Colorado Springs, where medical staff discovered evidence of substantial head trauma, including brain bleeds and a skull fracture.  The medical personnel also discovered that the child had multiple healing rib fractures — an indicia of nonaccidental trauma.

¶ 3    Based on the treatment team's suspicion that the children's injuries were the result of nonaccidental trauma, the Department filed a petition in dependency or neglect.  Ten days later, J.A. died of his injuries.  The Department initially placed the child in foster care and then with mother's sister (aunt), with whom she remained for the duration of this case.

¶ 4    Both parents admitted that the child had been subjected to an injurious environment, and the juvenile court adjudicated the child dependent or neglected.  Before mother's admission, the court

1

advised her that the Department believed that there was no appropriate treatment plan that could be devised for either parent, and that it intended to move for termination of parental rights.

¶ 5    Less than two months after the Department filed the petition, it moved to terminate parental rights and for a combined dispositional and termination hearing. The Department asked the juvenile court to find that no appropriate treatment plan could be devised for the parents. *See* § 19-3-508(1)(e)(I), C.R.S. 2025; § 19-3-604(1)(b)(II), (IV), (VII), C.R.S. 2025.

¶ 6    Later, both parents were arrested and charged with criminal child abuse (knowingly/recklessly causing death) and child abuse (knowingly/recklessly causing serious bodily injury (SBI)). After additional investigation, the criminal charges against father were dismissed. Father was subsequently deported to Mexico, although he remained a party to the proceedings and attended court hearings remotely. The juvenile court later granted the Department's request to withdraw the termination motion as to father.

¶ 7    Nearly nine months after the petition was filed, the court held a two-day evidentiary hearing. Mother's criminal charges were still pending at the time of the hearing. Four months later, the court

entered a written order concluding that no reasonable treatment plan could be devised for mother and terminated her parental rights.

¶ 8 On appeal, mother argues that the Department failed to make reasonable efforts to reunify the family and that there were less drastic alternatives to termination of her parental rights. Specifically, mother argues that placement of the child with either aunt or father would have allowed mother's parental rights to remain in place while serving the child's best interests. We are not persuaded.

## II. Termination Criteria and Standard of Review

¶ 9 Generally, a juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not reasonably complied with an appropriate treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c). Additionally, implicit in the statutory criteria for termination is the requirement that the juvenile court consider and

eliminate less drastic alternatives to termination of parental rights. *People in Interest of L.M.*, 2018 COA 57M, ¶ 24.

¶ 10     In deciding whether to terminate parental rights under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parents and reunify the family.  §§ 19-1-103(114), 19-3-100.5, 19-3-604(2)(h), C.R.S. 2025.  "Reasonable efforts" means "the exercise of diligence and care" to reunify the family. § 19-1-103(114).  The provision of appropriate services in accordance with section 19-3-208, C.R.S. 2025, satisfies the reasonable efforts standard.  *See* § 19-1-103(114).

¶ 11     However, under limited circumstances, a juvenile court may find — after the adjudication of a child as dependent or neglected — that an appropriate treatment plan cannot be devised for the parent.  § 19-3-508(1)(e)(I); *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 16.  Those circumstances include the parent's unfitness based on a single incident resulting in SBI to the child; SBI or death of a sibling due to proven parental abuse or neglect; or the torture of or extreme cruelty to the child or a sibling of the child. §§ 19-3-508(1)(e)(I), 19-3-604(1)(b)(II), (IV), (VII).

¶ 12    Under these circumstances, a court may terminate a parent's rights under section 19-3-604(1)(b) if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected and (2) an appropriate treatment plan cannot be devised to address the parent's unfitness. *See People in Interest of C.Z.*, 2015 COA 87, ¶ 7; *People in Interest of L.S.*, 2023 CO 3M, ¶ 32 (noting that a court may conclude that no appropriate treatment plan can be devised based solely on evidence that the child had sustained an SBI).

¶ 13    Whether a juvenile court properly terminated a parent's rights presents a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *See People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### III.   Reasonable Efforts

¶ 14    Mother argues that the juvenile court reversibly erred by terminating her parental rights because it did not consider the Department's failure to make reasonable efforts.

¶ 15     The objectives of a parent's treatment plan and the services ultimately provided to meet these objectives are inextricably linked. *People in Interest of K.B.*, 2016 COA 21, ¶ 16. Therefore, the reasonable efforts determination hinges on whether the Department provided appropriate services to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).

¶ 16     The Department is relieved of its obligation to provide reasonable efforts when the juvenile court determines that no appropriate treatment plan can be devised. *C.Z.*, ¶ 57. And if no treatment plan is adopted, there is no need to address at the termination hearing whether the Department made reasonable efforts. *Id.* at ¶ 59.

¶ 17     As mother notes, the juvenile court failed to address whether a treatment plan could be adopted until the termination hearing that occurred a year after the case opened. Mother also notes that, despite the absence of a treatment plan, the court occasionally made inconsistent findings regarding whether the Department was providing reasonable efforts. While the court's failure to timely

address reasonable efforts is troubling, we discern no reversible error.

¶ 18     Recall that the case opened in August 2024.  In September and October, the court found that the Department was making reasonable efforts.  In October, the Department filed its motion for a combined hearing to determine that no reasonable treatment plan could be adopted and to terminate both parents' rights to the child.  Although no treatment plan had been adopted, the Department continued to provide the parents with supervised family time through 2024.

¶ 19     In January 2025, the court orally found that the Department was no longer making reasonable efforts because the Department had stopped providing family time after mother's arrest.[1]  The Department then moved to continue the termination hearing because of an ongoing investigation into father's role, if any, in the

---

[1] We agree with mother that the juvenile court erred when it signed a proposed status conference order finding that the Department made reasonable efforts, especially after making an oral finding at the status conference that the Department had not made any efforts to reunify mother and the child.  At the time the court made this finding, the matter was scheduled for a combined termination and dispositional hearing less than a month later.

child abuse. The Department noted that its request to continue was unopposed and the record does not reflect any objection from mother.

¶ 20 As previously noted, the criminal charges against father were subsequently dismissed. Nearly ten months after the Department filed the petition, the juvenile court conducted the termination hearing. The court subsequently issued its termination judgment — which included the finding that there was no appropriate treatment plan — more than three months after the conclusion of the hearing.

¶ 21 We agree with mother's contention that the juvenile court erred by failing to require the Department to provide reasonable efforts during the one-year period of time between the filing of the combined termination/no reasonable treatment plan motion and the hearing on that motion.[2] *See* § 19-3-208. Likewise, we agree that the court should have considered whether supervised family time between mother and the child could have been provided while

---

[2] At oral argument, counsel for the Department did not dispute the court's obligation to timely consider whether the Department was providing reasonable efforts before the combined termination/no reasonable treatment plan hearing.

she was incarcerated and after her subsequent release pending trial on the criminal charges.  *See* § 19-1-131, C.R.S. 2025 ("The department shall promulgate rules that facilitate communication and family time between children and their parents who are incarcerated in a . . . jail  . . . to aid and encourage healthy child development[,] and reduce recidivism and intergenerational incarceration."); *see also* § 19-3-507(1)(f)(I)(B), C.R.S. 2025 (requiring the caseworker to communicate with jail staff to facilitate meaningful opportunities for family time between children and their incarcerated parents, whether in person or remote).

¶ 22    While the court erred by failing to timely consider these matters, we conclude that, under the unique circumstances of this case, the errors were harmless.  Given the court's ultimate finding that no reasonable treatment plan could be devised for mother, we discern no harm that the delay caused her.  Stated otherwise, because the court ultimately found that no reasonable treatment plan could be devised, the result for mother would not have been different if the court had timely considered that issue.  Thus, the court's errors were harmless.  *See People in Interest of C.C.*, 2022 COA 81, ¶ 20 (an error is harmless unless "it can be said with fair

assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself"); *C.Z.*, ¶ 59.

## IV.   Less Drastic Alternative

¶ 23    Next, mother contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. Specifically, mother argues that an allocation of parental responsibilities (APR) could have been made to the aunt — who cared for the child during the pendency of the case and was willing to accept such responsibility — or alternatively, that an APR could have been granted to father.

## A.   Additional Law

¶ 24    The juvenile court must consider and eliminate less drastic alternatives before terminating parental rights under section 19-3-604(1)(b).  *See C.Z.*, ¶ 61.  In doing so, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3); *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007).  The court may consider, among other things, whether an ongoing relationship with the parent would be beneficial or detrimental to the child.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

10

¶ 25    If the court considers a less drastic alternative but finds that termination is in the child's best interest, it must reject the less drastic alternative and order termination. *A.M.*, ¶ 32. We are bound by the court's findings on less drastic alternatives if they are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 26    The juvenile court noted the "significant" injuries to the children, found that mother caused those injuries, and concluded that only terminating the parent-child relationship would adequately serve the child's best interests. Although the court considered less drastic alternatives, including an APR to aunt, it determined that "it would be detrimental to the physical safety of the child to maintain an ongoing legal relationship with [mother]."

¶ 27    The record supports the court's findings. The coroner, an expert in forensic pathology, testified at the termination hearing that J.A. suffered extensive brain injuries from blunt force head trauma. The coroner concluded that the manner of death was homicide and that "these types of injuries are very consistent with the specific types of injuries that we see in abused children." A

11

physician whom the court qualified as an expert in child abuse pediatrics testified that both children's injuries were "diagnostic of child physical abuse." A pediatrics professor, whom the court also qualified as an expert in child abuse pediatrics, testified that the child's rib injuries qualified as SBI and were consistent with child abuse. And a special agent with the Colorado Bureau of Investigation testified that nonaccidental trauma caused both children's injuries and that only mother was "with the children practically [one hundred percent] of the time."

¶ 28 Mother argues in her reply brief that an APR to aunt was an appropriate alternative to termination because aunt would have been able to protect the child from mother. But the juvenile court found, with record support, that aunt "lack[ed] appreciation for the gravity of [mother's] actions," did not recognize the danger mother posed to the child, and would not prioritize the interests of the child over those of mother. This finding is also supported by the record. Indeed, aunt testified that she did not believe mother — her sister — injured the children. She also testified that she did not believe mother posed a danger to the child, stating that she would allow mother to have unsupervised contact with the child.

12

¶ 29    The court also found that mother's "efforts to minimize the pressure" she was experiencing in raising twins "essentially on her own" (father was employed full time and worked long hours), suggested that she was not honest with the medical staff or investigators. The record supports the court's findings.

¶ 30    The child abuse expert testified that mother told her that "raising twins did not add stress to her relationship with father." And the special agent testified that mother said that "exhaustion was not an issue" and that the children "never cr[ied]." But the special agent explained that mother sent text messages that "clearly" showed "some signs of exhaustion and frustration," contradicting her statements to investigators.

¶ 31    Although the juvenile court did not make specific findings as to placement with father, the court generally found that it would not be safe for the child to have a relationship with mother. The record as a whole supports the court's conclusion that any future contact between mother and the child would not serve the child's best interests.

¶ 32    This conclusion is supported by the undisputed fact that these children were only seventy-seven days old at the time the case

opened. They suffered significant injuries (and J.A later died) during their short time with mother. On this record, we discern no error in the juvenile court's conclusion that maintaining a relationship with mother — whether through an APR to father or aunt — would be detrimental to the child.

¶ 33 We acknowledge mother's argument that, because the Department did not provide services to her (other than family time for a short period), we cannot discern whether she would have made progress in her understanding of her role in J.A.'s death and the child's injuries had those services been provided. We also knowledge mother's argument that preserving her parental relationship could have provided the child some economic benefit had she been able to obtain a job while incarcerated or otherwise. But given the limited nature of mother's relationship with the child before this case opened, coupled with the extraordinary abuse inflicted on the children, we cannot conclude that these speculative considerations would have impacted the court's decision to terminate her parental rights.

¶ 34 Because the record supports the juvenile court's findings, we will not disturb them or the court's resulting legal conclusion. *B.H.,*

¶ 80 ("When a "trial court consider[s] the availability of an [allocation of parental responsibilities], and still determine[s] that termination of parental rights would be in the child's best interests," we are "bound to affirm the decision of the trial court" if its "findings are supported by the record.") (quoting *People in Interest of A.M.*, 2021 CO 14, ¶ 49).

V.    Disposition

The judgment is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.