25CA2164 Peo in Interest of ER 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2164
Arapahoe County District Court No. 22JV414
Honorable Shay Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.R. and Z.L., Children,

and Concerning A.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

John Christofferson, Interim County Attorney, Tamra White, Assistant County Attorney, Aurora, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for Appellant

¶ 1    A.B. (mother) appeals the judgment terminating her parent-child legal relationships with E.R. and Z.L. (the children).  She contends that the juvenile court erred by finding she was unfit and not likely to become fit within a reasonable time.  We affirm.

## I.    Background

¶ 2    In September 2022, the Arapahoe County Department of Human Services filed a petition in dependency and neglect concerning the children, who were then three years old and one year old.[1]  The petition alleged that mother had reportedly been leaving the children unattended and engaging in "increasingly aggressive and erratic" behavior, including "threaten[ing] to kill [a] staff member" at the shelter where the family was staying.

¶ 3    The juvenile court entered a deferred adjudication for mother, which the Department moved to revoke nearly a year later.  After a hearing, the court granted the revocation motion and adjudicated the children dependent and neglected.  The court adopted a treatment plan for mother requiring her to (1) attend family time consistently; (2) address her mental health; (3) maintain

---

[1] The petition also concerned the children's four other siblings, who are not at issue in this appeal.

employment or receive other legal income; (4) provide stable housing for the children; and (5) communicate with the caseworker.

¶ 4 Five months later, the Department moved to terminate mother's parent-child legal relationships with the children. After a hearing in September 2025, the juvenile court granted the motion.

## II. Compliance with the Indian Child Welfare Act (ICWA)

¶ 5 Mother asserts that the juvenile court failed to make an inquiry into whether the children were Indian children in connection with the termination proceedings. We disagree.

¶ 6 At the commencement of each emergency, voluntary, or involuntary child custody proceeding, the court must ask each participant whether "the participant knows or has reason to know that the child is an Indian child or whether the participant has information that is relevant to determining whether the child is an Indian child." § 19-1.2-107(2), C.R.S. 2025; *see* 25 C.F.R. § 23.107(a) (2025). This means the court must ordinarily make (1) an initial inquiry at the commencement of the dependency and neglect proceeding and (2) a second inquiry when termination is sought. *People in Interest of C.A.*, 2017 COA 135, ¶¶ 2, 10; *see also* § 19-1.2-125(1), C.R.S. 2025 ("Upon the filing of a motion to

terminate . . . , the court shall make a finding, subject to the procedures described in section 19-1.2-107(2) and (3), regarding whether there is reason to know that the child is an Indian child.").[2]

¶ 7 In this case, mother's counsel reported at the temporary custody hearing that mother "may have Native American ancestry from a tribe in Florida." Based on this general assertion of heritage, the Department sent notices to the Miccosukee Tribe of Indians and the Seminole Tribe of Florida, as well as the Bureau of Indian Affairs. Both tribes responded that the children were neither enrolled members, nor eligible for enrollment, with their tribes.

¶ 8 Around the same time, the Department moved to terminate mother's parental rights, asserting in the motion that there was no credible evidence that the children were Indian children under ICWA. *See* 25 U.S.C. § 1903(4) (defining "Indian child" as an unmarried person under eighteen years old who is either (1) a

---

[2] The Colorado Indian Child Welfare Act, §§ 19-1.2-101 to -132, C.R.S. 2025, went into effect in August 2025, after the Department in this case sought termination but before the termination hearing. At the same time, the General Assembly repealed section 19-1.2-107's predecessor, section 19-1-126, C.R.S. 2024. The legislative changes have no effect on the analysis in this case.

member of an Indian tribe or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe).

¶ 9 At a subsequent hearing, after the motion for termination was filed, the county attorney requested a finding that ICWA did not apply in this case based on (1) the tribes' responses to the Department's notices and (2) Z.L.'s father's indication that he did not have any Native American heritage. (The Department never determined the identity of E.R.'s father.) Although mother did not appear at the hearing, the court made the required ICWA inquiries of everyone who did, including mother's counsel. No one reported any additional information concerning ICWA. Based on this inquiry and the record presented by the county attorney, the court found that ICWA did not apply. *See* §§ 19-1.2-107(2)-(3), 19-1.2-125(1).

¶ 10 Mother acknowledges that this inquiry occurred. And she did not appear at any hearings after the termination motion was filed. Moreover, the caseworker testified at the termination hearing that (1) she did not recall mother ever indicating that she was or could be a member of an Indian tribe; and (2) she had no reason to believe that either of the children was a member of a tribe. Then, in its termination order, the juvenile court found that the Department

4

had made continuing inquiries regarding mother's potential Native American heritage and again found that ICWA did not apply.

¶ 11    Based on this record, we conclude that the court satisfied its obligation to make an ICWA inquiry of the participants "[u]pon the filing of [the] motion to terminate." § 19-1.2-125(1); *cf. C.A.*, ¶ 20 (concluding that record did not demonstrate compliance with ICWA after the department sought termination). Although mother did not appear at any hearings during the termination proceedings, the court nonetheless inquired of her counsel *after* the Department had moved for termination. *See* §§ 19-1.2-107(2)(a), 19-1.2-125(1).

### III.    Fitness

¶ 12    Mother next contends that the juvenile court erred by finding that she was unfit and that her conduct or condition was unlikely to change within a reasonable time because she was working toward complying with her treatment plan. We disagree.

### A.    Applicable Law and Standard of Review

¶ 13    A juvenile court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment

5

plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 14    A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficient to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A court may also consider a parent's noncompliance with a treatment plan. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 15    When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of the child. *Id.* at ¶ 25. But a

"reasonable time" is not an indefinite time. *Id.* And even when a parent has made progress on a treatment plan, the court need not give the parent additional time to become fit. *See id.* at ¶¶ 24-25.

¶ 16    In addition, when, as in this case, the child is under six years old when the petition is filed, the action is subject to the expedited permanency planning (EPP) provisions, and the court must place the child in a permanent home as expeditiously as possible. *See id.* at ¶ 25; §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025. In such a case, the court may not find a parent to be in reasonable compliance with a treatment plan when the parent (1) has not attended family time as set forth in the treatment plan, unless good cause is shown; or (2) exhibits the same concerns addressed in the treatment plan without adequate improvement and is unable or unwilling to provide nurturing and safe parenting. § 19-3-604(1)(c)(I)(A)-(B).

¶ 17    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review its legal conclusions de novo. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The determination of whether a parent can become fit within a reasonable time is a

factual question that we review for clear error. *S.Z.S.*, ¶¶ 25, 29; *People in Interest of A.J.L.*, 243 P.3d 244, 256 (Colo. 2010).

## B. Analysis

¶ 18 The juvenile court found that mother was unfit because she had not complied with her treatment plan and had disengaged from the case for at least six months leading up to the termination hearing. In particular, the court found mother had not complied with the family time component of her plan because she had not seen Z.L. for five months, had not seen E.R. for a year, and had not shown good cause for failing to attend family time. *See* § 19-3-604(1)(c)(I)(A). The caseworker's testimony supports those findings.

¶ 19 The court also found, with record support, that mother did not successfully comply with other components of her treatment plan. The caseworker testified that mother did not confirm her housing, verify her employment, or complete required mental health treatment. Mother's contact with the caseworker was sporadic, with two extended periods of disengagement in which she had no contact with the caseworker, including the six months preceding the termination hearing. The court thus found that mother continued to exhibit the same concerns that led to the Department's

involvement without adequate improvement and was unwilling to provide nurturing and safe parenting. *See* § 19-3-604(1)(b).

¶ 20 In finding that mother's conduct or condition was unlikely to change within a reasonable time, the court noted that mother had been disengaged from the case for six months and "had a previous disengagement for an extended period." Given this "pattern," the court had "significant concerns that even if she were to re-engage at this point," a "similar set of circumstances" could reoccur.

¶ 21 The court also found that "because of [mother's] extended absences from the children's li[ves]," there would have to be "significant amounts" of therapy and similar supports before family time could be reinitiated, especially with E.R. Indeed, the caseworker opined that mother's inconsistency with family time had been "highly impactful" on the children, with E.R. refusing to attend visits. The court therefore determined that even if mother were to reengage "tomorrow," her conduct would be unlikely to change within a reasonable period. *See S.Z.S.*, ¶ 25 (recognizing that a reasonable time is not an indefinite time and must be based on the child's physical, mental, and emotional conditions and needs).

¶ 22    Moreover, this was an EPP case that had been open for three years at the time of the termination hearing.  *See* §§ 19-1-102(1.6), 19-1-123.  Given this duration, the caseworker opined that the children did not "need [the case] to be open any longer."  *See S.Z.S.*, ¶ 25.

¶ 23    Mother asserts that she made "meaningful efforts" to meet her treatment plan objectives.  And the record indicates that at times she did.  Indeed, the court found that mother had been compliant with her treatment plan at various times during the case and had previously been "active" and "very engaged."  But the court weighed mother's periodic engagement against her extended disengagement and the young children's needs, finding that mother was not likely to become fit within a reasonable time.  *See id.* at ¶ 29; *see also People in Interest of K.B.*, 2016 COA 21, ¶ 26 (noting that partial or even substantial compliance with a treatment plan does not necessarily render a parent fit).  We may not reweigh the evidence or substitute our judgment for the juvenile court's.  *See S.Z.S.*, ¶ 29.

¶ 24    Thus, because the record supports the juvenile court's findings that mother was an unfit parent and could not become fit within a reasonable time, we do not disturb those findings.  *See id.*

## IV.  Disposition

The judgment is affirmed.

JUDGE WELLING and JUDGE LUM concur.